Andrew Grimm
agrimm3@gmail.com
15287 Pepperwood Drive
Omaha, NE 68154
Tel: (650) 422-8035
Pro Se Plaintiff

FILED 29 JAN '18 15:53 USDC-ORP

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ANDREW GRIMM,<br>    Plaintiff, | Case No. 3:18-cv-183-MO |
| v. | PLAINTIFF'S COMPLAINT |
| CITY OF PORTLAND, L. MCHENRY, F.<br>EARLE, AND RETRIEVER TOWING,<br>    Defendants. | |

Plaintiff Andrew Grimm for his complaint against Defendants—the City of Portland, Officer L.

McHenry, Officer F. Earle, and Retriever Towing—alleges as follows:


## I. NATURE OF THE CASE

1. The U.S. Constitution requires government actors to provide notice that is reasonably
   calculated to inform interested parties of impending government action against their
   property interests. Notice is reasonably calculated if the government actors act as though
   they desire to actually inform the interested parties.

2. The City of Portland ("Portland") and its agents fell far short of this constitutional
   requirement when they towed Plaintiff's car knowing that they had not even attempted to
   notify Plaintiff of the tow. Portland had many options to provide direct, timely, and actual

# 76531

notice to Plaintiff, but chose not to use any of these options. Portland's actions were neither reasonably calculated to notify Plaintiff of the tow nor what someone who desired to actually inform Plaintiff would have done.

3. Portland's failure to provide timely notice of the government's intention to tow Plaintiff's car is especially unjustifiable in an age of instantaneous communication: "As advances in technology make it easier and easier to identify and locate property owners, many States appear to be doing less and less to meet their constitutional obligation to provide adequate notice […]". Taylor v. Yee, 136 S. Ct. 929, 930 (2016) (Alito, J., concurring in denial of certiorari).

## II. PARTIES TO THE CASE

4. **Plaintiff.** Andrew Grimm is a natural person.

5. **Defendants.** There are four Defendants in this action:

   a. **City of Portland.** The City of Portland is a municipal governmental entity in the State of Oregon.

   b. **Officer L. McHenry.** Officer L. McHenry is a natural person and an agent of the City of Portland.

   c. **Officer F. Earle.** Officer F. Earle is a natural person and an agent of the City of Portland.

   d. **Retriever Towing.** Retriever Towing is a business entity incorporated in the State of Oregon and an agent of the City of Portland.

## III. JURISDICTION & VENUE

6. **Federal Question Jurisdiction.** This action arises under the U.S. Constitution, U.S. Const. amend. XIV § 1. This Court, therefore, has subject matter jurisdiction over Plaintiff's constitutional claims pursuant to 28 U.S.C. § 1331.

7. **Personal Jurisdiction.** Under Federal Rule of Civil Procedure 4(k)(1)(A), this Court will have personal jurisdiction over Defendants upon proper service of them because they are subject to the general jurisdiction of Multnomah County Circuit Court. Cf. ORCP 4A(4), ORCP 4C.

8. **Venue.** A substantial part of the events giving rise to the claims in this case occurred in Oregon. Specifically, Defendants' unlawful failure to provide adequate notice of a tow occurred in Portland, Oregon. Therefore, this Court is a proper venue pursuant to 28 U.S.C. § 1391(b)(2).

9. **Divisional Venue.** A substantial part of the events or omissions giving rise to the claims in this case occurred in Portland, Oregon. Therefore, the Portland Division of this Court is the proper division to adjudicate this action. LR 3-2(b).

## IV. STATEMENT OF FACTS

### A. Plaintiff's Car Is Registered with Portland's Mobile Parking App.

10. Plaintiff's car is a 1999 Honda Accord with California license-plate number 6DNF990.

11. On October 25, 2017, Plaintiff downloaded Portland's mobile parking app, called Parking Kitty, to his iPhone.

12. Portland's mobile parking app permits registered users to pay for parking remotely using their cellphones.

13. Portland's mobile parking app permits Portland to contact registered users about their parked cars via email and via their cellphones.

14. On October 25, 2017, Plaintiff registered his car with Portland's mobile parking app.

15. As part of the registration process for Portland's mobile parking app, Portland requested Plaintiff's cellphone number and his email address.

16. As part of the registration process for Portland's mobile parking app, Plaintiff provided his cellphone number and his email address to Portland.

**B. Plaintiff's Car Is Registered with KnowTow.**

17. On March 6, 2017, Plaintiff registered his car with KnowTow.

18. KnowTow is a free online service that allows governments to provide immediate and direct notice of a tow to a KnowTow user.

19. KnowTow automatically sends an immediate text, email and voicemail notification of a tow to the affected user once a government enters that user's license-plate number on KnowTow's website (knowtow.net).

20. Portland knows that by using KnowTow it can provide immediate and direct notice of a tow to any KnowTow user for free.

21. Portland also knows that vehicles with KnowTow decals are registered with KnowTow.

22. Plaintiff's car conspicuously displays KnowTow decals near its front and back license plates. These decals display KnowTow's logo, KnowTow's slogan ("You should know, *before* they tow"), and KnowTow's website (knowtow.net).

23. Portland knows it could provide Plaintiff immediate and direct notice of a tow using KnowTow.

**C. Plaintiff Parked His Car in Downtown Portland.**

24. On December 14, 2017, Plaintiff parked his car in a public parking spot on Southwest Hall Street in downtown Portland, Oregon.

25. When Plaintiff parked his car, Plaintiff used Portland's mobile parking app to pay for that parking spot from 5:41 P.M. to 7:00 P.M on December 14, 2017.

26. The transaction number of this payment is # 78395409.

27. Shortly before 7:00 P.M. on December 14, 2017, Portland sent a notification to Plaintiff on his iPhone via Portland's mobile parking app, notifying Plaintiff that his parking payment was about to expire.

28. At 7:00 P.M. on December 14, 2017, Plaintiff's time to legally park on Hall Street expired.

29. At 7:22 P.M. on December 14, 2017, Portland sent an email to Plaintiff's email address via its mobile parking app providing a receipt with details of the parking transaction.

30. Plaintiff did not refill the parking meter.

31. From 7:00 P.M. on December 14, 2017, until Plaintiff's car was towed by Portland at 9:24 A.M. on December 21, 2017, Plaintiff's vehicle was unlawfully parked on Hall Street.

32. During the time that Plaintiff's car was unlawfully parked on Hall Street, his car was not impeding traffic and did not create an emergency situation.

**D. Portland's Parking Citations Gave No Notice of a Tow.**

33. While Plaintiff's car was unlawfully parked, Portland issued four parking citations against Plaintiff's car for being parked in a metered zone without proper payment.

34. On December 15, 2017, at 8:54 A.M., Portland's Officer McHenry issued the first citation, # HA30383285, against Plaintiff's car for being parked without proper payment.

    a. Officer McHenry posted this citation on the exterior of Plaintiff's windshield, where it remained unseen by Plaintiff until after his car was towed.

    b. This first citation does not mention a tow.

    c. This first citation provided no notice of a tow.

35. On December 18, 2017, at 9:32 A.M., Portland's Officer Earle issued the second citation, # HA30925527, against Plaintiff's car for being parked without proper payment.

    a. Officer Earle saw that the first citation remained undisturbed on Plaintiff's windshield.

    b. Officer Earle posted the second citation on top of the first citation, where both remained unseen by Plaintiff until after his car was towed.

    c. This second citation does not mention a tow.

    d. This second citation provided no notice of a tow.

36. On December 19, 2017, at 8:43 A.M., Portland's Officer Earle issued the third citation, # HA30925545, against Plaintiff's car for being parked without proper payment.

    a. Officer Earle saw that the first and second citations remained undisturbed on Plaintiff's windshield.

    b. Officer Earle posted the third citation on top of the first and second citations, where all three remained unseen by Plaintiff until after his car was towed.

    c. This third citation does not mention a tow.

    d. This third citation provided no notice of a tow.

37. On December 21, 2017, at 8:35 A.M., Portland's Officer Earle issued the fourth citation, # HA30925607, against Plaintiff's car for being parked without proper payment.

    a. Officer Earle saw that the previous three citations remained undisturbed on Plaintiff's windshield.

    b. Officer Earle posted the fourth citation on top of the first, the second, and the third citations, where all four remained unseen by Plaintiff until after his car was towed.

    c. This fourth citation does not mention a tow.

    d. This fourth citation provided no notice of a tow.

38. None of these four citations mention a tow.

39. None of these four citations provide notice of a tow.

40. None of these four citations were seen by Plaintiff until after his car was towed.

**E. Defendants Towed Plaintiff's Car Without Notice.**

41. Sometime between 8:35 A.M. and 8:52 A.M. on December 21, 2017, Officer Earle ordered the tow of Plaintiff's car from Hall Street.

42. Neither Portland nor Officer Earle made any attempt to contact Plaintiff about the tow before ordering the tow. Nor did any other agent of Portland.

43. Officer Earle, or another of Portland's agents, contacted Retriever Towing and instructed Retriever Towing to tow and impound Plaintiff's car.

44. Neither Portland nor Officer Earle made any attempt to contact Plaintiff about the tow while Retriever Towing was en route to Hall Street. Nor did any other agent of Portland.

45. Retriever Towing arrived to Hall Street at 9:17 A.M. on December 21, 2017, and began the process of towing Plaintiff's car.

46. Neither Portland nor Officer Earle made any attempt to contact Plaintiff about the tow while Retriever Towing was in the process of towing Plaintiff's car. Nor did any other agent of Portland.

47. At 9:24 A.M. on December 21, 2017, Retriever Towing drove away with Plaintiff's car.

48. Neither Portland nor Officer Earle made any attempt to contact Plaintiff about the tow during the remainder of December 21, 2017. Nor did any other agent of Portland.

49. Defendants towed Plaintiff's car without attempting to provide notice of the tow to Plaintiff.

## F. When It Towed Plaintiff's Car, Portland Knew It Had Not Provided Notice of the Tow.

50. Portland towed Plaintiff's car knowing it had failed to provide Plaintiff notice of the tow.

51. Portland towed Plaintiff's car knowing that Plaintiff had received no notice of the tow.

52. Before Defendants towed Plaintiff's car, Portland's officers issued four citations against Plaintiff's car for being parked without proper payment.

53. None of these citations mention anything about the tow of Plaintiff's car.

54. None of these citations provided notice of the tow.

55. All materials left by Portland's officers on Plaintiff's windshield remained undisturbed until after Plaintiff's car was towed.

56. Plaintiff never saw any of the materials left on his windshield until after he retrieved his car from its impoundment.

57. Each time Officer Earle issued a citation, Officer Earle saw that the materials previously left on Plaintiff's windshield remained undisturbed.

58. Each time Officer Earle issued a citation, Officer Earle took a photo of the undisturbed materials on Plaintiff's windshield.

59. Each time Officer Earle issued a citation, Officer Earle knew that Plaintiff had not received any of the materials previously left on Plaintiff's windshield.

60. At the time Officer Earle ordered the tow, Portland and Officer Earle knew that Plaintiff had not received any of the materials that Portland left on Plaintiff's windshield.

61. At the time Officer Earle ordered the tow, Portland and its officers knew that Plaintiff had not received any notice of a tow.

62. At the time Officer Earle ordered the tow, Portland and its officers had not even attempted to provide notice of the tow to Plaintiff.

63. Aside from the unseen materials left on Plaintiff's windshield, no efforts were made before the tow to inform Plaintiff of any governmental action against his car.

64. Portland and its officers ordered Plaintiff's car towed knowing they had failed to provide notice.

65. Prior to December 22, 2017, the day after the tow, Defendants never attempted to provide notice of the tow to Plaintiff.

**G. Portland Easily Could Have Provided Immediate Notice of a Tow.**

66. Portland had many options to provide Plaintiff immediate notice of a tow.

67. Portland uses the following commonplace communication methods in the ordinary course of its business:

    a.  Portland uses the telephone to conduct its business.

    b.  Portland uses email to conduct its business.

    c.  Portland uses a mobile parking app to conduct its business.

    d.  Portland uses the internet to conduct its business.

68. These communication methods enable immediate communication.

69. Portland regularly uses these communication methods to contact those it wants to contact.

70. Portland regularly uses these communication methods to convey information it wants to convey.

71. Despite regularly using these communication methods, Portland did not use any of them to notify Plaintiff of the tow. Neither did any other Defendant.

72. By using any of these communication methods, Defendants could have provided immediate notice of the tow.

73. Defendants chose not to use any of these communication methods to provide notice of the tow.

74. Portland could have used its own mobile parking app to provide Plaintiff immediate notice of the tow.

   a. Portland knew Plaintiff's car was registered with Portland's mobile parking app.

   b. Portland had previously contacted Plaintiff via Portland's mobile parking app about his parked car.

   c. Portland could have provided Plaintiff immediate notice of a tow via Portland's mobile parking app.

   d. Portland chose not to use its own mobile parking app to provide Plaintiff notice of the tow.

75. Portland could have emailed Plaintiff to provide immediate notice of the tow.

   a. Portland requested Plaintiff's email address when Plaintiff registered for Portland's mobile parking app.

   b. Portland knew Plaintiff's email address.

      c.  Portland had previously contacted Plaintiff at his email address about his parked

          car.

      d.  Portland could have provided Plaintiff immediate notice of a tow by emailing

          him.

      e.  Portland chose not to email Plaintiff to provide notice of the tow.

76. Portland could have texted Plaintiff to provide immediate notice of the tow.

      a.  Portland requested Plaintiff's cellphone number when Plaintiff registered for

          Portland's mobile parking app.

      b.  Portland knew Plaintiff's cellphone number.

      c.  Portland could have texted Plaintiff to provide immediate notice of a tow.

      d.  Portland chose not to text Plaintiff to provide notice of the tow.

77. Portland could have called Plaintiff to provide immediate notice of the tow.

      a.  Portland requested Plaintiff's cellphone number when Plaintiff registered for

          Portland's mobile parking app.

      b.  Portland knew Plaintiff's cellphone number.

      c.  Portland could have called Plaintiff to provide immediate notice of a tow.

      d.  Portland chose not to call Plaintiff to provide notice of the tow.

78. Portland could have used KnowTow's website to provide Plaintiff immediate notice of

the tow.

      a.  Each time Portland's officers issued Plaintiff a citation, the officer took at least

          one photo of a KnowTow decal on Plaintiff's car.

      b.  Portland knew Plaintiff's car was registered with KnowTow.

    c.  Portland knew that it could use KnowTow's website to provide Plaintiff immediate notice of a tow.

    d.  Portland could have used KnowTow's website to provide immediate notice of a tow.

    e.  Portland chose not to use KnowTow's website to provide Plaintiff notice of the tow.

79. At any point, Defendants could have used any of the above communication methods to provide Plaintiff immediate notice of the tow.

80. Instead, Defendants repeatedly chose not to provide immediate notice of the tow when they easily could have.

    a.  Defendants did not attempt immediate notice when Officer McHenry issued the first citation for unpaid parking.

    b.  Defendants did not attempt immediate notice when Officer Earle issued the second citation for unpaid parking.

    c.  Defendants did not attempt immediate notice when Officer Earle issued the third citation for unpaid parking.

    d.  Defendants did not attempt immediate notice when Officer Earle issued the fourth citation for unpaid parking.

    e.  Defendants did not attempt immediate notice when Officer Earle ordered the tow.

    f.  Defendants did not attempt immediate notice while Retriever Towing was en route to Plaintiff's car.

    g.  Defendants did not attempt immediate notice while Retriever Towing was in the process of towing Plaintiff's car.

h. Defendants did not attempt immediate notice as Retriever Towing drove away with Plaintiff's car.

i. Defendants did not attempt immediate notice for the entire first day of their impoundment of Plaintiff's car.

j. At no point from December 15 to December 22, 2017, did Defendants attempt immediate notice.

k. In fact, Defendants never attempted immediate notice.

81. From December 15 until December 22, 2017, Defendants knew that none of their actions notified Plaintiff of the tow.

82. At any time, Portland could have easily provided Plaintiff immediate notice of the tow.

83. Someone who desired to actually inform Plaintiff of the tow would have called, texted, or emailed Plaintiff.

84. Someone who desired to actually inform Plaintiff of the tow would have used their own mobile parking app to contact Plaintiff.

85. Someone who desired to actually inform Plaintiff of the tow would have used a free online tow-notification service to contact Plaintiff.

86. Portland decided not to use any of these communication methods to inform Plaintiff of the tow.

87. Portland did not act as though it desired to actually inform Plaintiff of the tow.

**G. Portland Easily Notified Retriever Towing, But Chose Not to Notify Plaintiff.**

88. On December 21, 2017, Portland initiated the tow of Plaintiff's car.

89. At that time, Portland informed Retriever Towing of its decision to tow Plaintiff's car.

90. Portland somehow contacted Retriever Towing about the tow.

91. Portland acted as though it desired to actually inform Retriever Towing of the tow.

92. Portland, in fact, informed Retriever Towing of the tow.

93. Portland did not act as though it desired to actually inform Plaintiff of the tow.

94. Whatever method of communication Portland used to inform Retriever Towing of the tow, it could have used to inform Plaintiff of the tow.

95. Whatever method of communication Portland used to inform Retriever Towing of the tow, it did not use to inform Plaintiff of the tow.

96. Portland, in fact, failed to inform Plaintiff of the tow.

97. At the time of the tow, Portland knew it had not provided Plaintiff with notice of the tow.

98. Instead of attempting to inform Plaintiff of the tow using the method of communication Portland had used to inform Retriever Towing, Portland simply towed Plaintiff's car without any notice.

## H. Portland Only Attempted Notice After the Tow.

99. During the six days from December 15 to December 21, 2017, including the entire first day that Plaintiff's car was impounded, Portland made no attempt to mail notice of the tow to Plaintiff.

    a. Portland waited until six days after issuance of the first citation before mailing a letter.

    b. Portland waited until after it had towed Plaintiff's car to mail a letter.

100. When it wanted to get in touch with Retriever Towing about the tow, Portland did not rely upon postal mail to inform Retriever Towing.

101. On December 22, 2017, the day *after* Defendants towed Plaintiff's car, Portland finally mailed a letter about the tow.

102. Portland sent its letter to where Plaintiff was not.

    a.   Portland sent its letter to Plaintiff's address in Nebraska.

    b.   When Portland sent its letter to Nebraska, Plaintiff was in Oregon.

    c.   When Portland sent its letter to Nebraska, Plaintiff's car was impounded in Oregon.

    d.   When Portland sent its letter to Nebraska, Defendants knew Plaintiff's car was in Oregon, not Nebraska.

    e.   When Portland sent the letter to Nebraska, Defendants had reason to believe that Plaintiff was in Oregon, not Nebraska.

103. This letter did not arrive to Plaintiff's address in Nebraska until December 26, 2017, four days after it was sent and five days after the tow.

104. Portland's letter arrived to where Plaintiff was not.

    a.   When Portland's letter arrived in Nebraska, Plaintiff was still in Oregon.

    b.   When Portland's letter arrived in Nebraska, Plaintiff's car was still impounded in Oregon.

105. Plaintiff had his iPhone on his person at almost all times from December 15 to December 26, 2017.

106. Had Defendants used any of the methods of communication mentioned in lines 66-87 of this Complaint to provide Plaintiff notice of the tow, Plaintiff would have received notice immediately.

107. Instead, Portland mailed a letter, which took four days to arrive.

108. Had Defendants used any of the methods of communication mentioned in lines 66-87 of this Complaint to provide Plaintiff notice of the tow, Plaintiff would have received notice on his iPhone regardless of where he was.

109. Instead, Portland mailed a letter, which was sent to where Plaintiff was not.

110. Defendants chose not to provide immediate notice that would be effective regardless of where Plaintiff was.

111. Had Defendants used any of the communication methods detailed in lines 66-87, notice would have been sent immediately and directly to the iPhone in Plaintiff's pocket.

**I. Defective Notice Is Portland's Policy.**

112. The actions of Portland's officers and Retriever Towing were in accordance with Portland's explicit towing policies.

113. Portland's policies do not contemplate attempting prior notice except by the posting of documents on a vehicle.

   a. It is Portland's policy to tow regardless of whether the posting of documents on a vehicle was reasonably calculated to notify in that instance.

   b. It is Portland's policy to tow even if the posting of documents on a vehicle fail to provide notice.

   c. It is Portland's policy to tow even if its agents know that the posting of documents failed to provide notice.

   d. Portland's policy is indifferent to whether notice is reasonably calculated in any particular circumstance.

114. Officer Earle and Retriever Towing acted according to Portland's towing policies, making no attempts at notice except to leave documents on Plaintiff's windshield.

115. Officer Earle and Retriever Towing acted according to Portland's towing policies when they towed knowing that their posted documents had failed to provide notice.

116. Officer Earle and Retriever Towing acted according to Portland's towing policies when they towed Plaintiff's car without notice.

117. According to Portland's code, Portland may tow a vehicle without any prior notice. See Portland City Code ("PCC") 16.30.220 ("Towing Without Prior Notice").

118. According to Portland's code, Portland may tow a vehicle without any prior notice for being illegally parked in nearly any parking spot in the city. Cf. PCC 16.30.220(B).

119. According to Portland's code, attempting prior notice of a tow is rarely required. Cf. PCC 16.30.310; cf. also PCC 16.30.230 ("When Notice Required Before Towing") (repealed Nov. 13, 1998).

120. To the extent that Portland's policies contemplate any prior notice of a tow, it is only through the posting of documents on a vehicle. See PCC 16.30.225(A)-(C).

121. The only other method of notice contemplated by Portland's towing policies is postal mail sent *after* a tow. See PCC 16.30.225(D), 16.30.320.

122. Portland's official policy and custom is to tow without attempting notice via commonplace communication methods that Portland uses in the ordinary course of its business.

    a. Portland's code authorizes tows without use of telephones to attempt notice.

    b. Portland's code authorizes tows without use of email to attempt notice.

    c. Portland's code authorizes tows without use of Portland's own mobile parking app to attempt notice.

    d. Portland's code authorizes tows without use of the internet to attempt notice.

123. Portland authorizes tows without use of these commonplace communication methods to attempt notice, even when no notice is otherwise provided.

124. Portland authorizes tows without use of these commonplace communication methods to attempt notice, even when such methods are easy, are cheap, and would provide immediate, actual notice of the tow to interested parties.

125. Portland's official policy and custom is to tow without attempting notice via KnowTow, even when no notice is otherwise provided.

126. Portland authorizes tows without use of KnowTow, even when KnowTow is easy, is free, and would provide immediate, actual notice of the tow to interested parties.

127. Portland's actions—and the actions of its agents—were in accordance with Portland's policies.

128. Portland's policies permit the tow of a vehicle without notice.

129. Portland's policies permit the tow of a vehicle without notice when Portland could easily provide immediate, actual notice.

**J. Retriever Towing Had No Basis to Believe that Notice of the Tow Was Provided.**

130. At the time Retriever Towing towed Plaintiff's car, no notice had been provided to Plaintiff.

131. At the time Retriever Towing towed Plaintiff's car, Retriever Towing did not observe any indicia that Plaintiff had been notified of the tow.

132. At the time Retriever Towing towed Plaintiff's car, Retriever Towing had no basis to believe that Plaintiff had been notified of the tow.

133. Retriever Towing made no inquiry with Portland or with Officer Earle to ensure that they had attempted to notify Plaintiff of the tow.

134. Retriever Towing proceeded to tow and impound Plaintiff's car without any indication that Portland or Officer Earle had attempted to contact Plaintiff about the tow.

135. Due to Retriever Towing's impoundment, Plaintiff was not able to access his vehicle on Christmas Day.


**PLAINTIFF'S CAUSE OF ACTION**
**Violation of the Fourteenth Amendment's Due Process Clause**
**Plaintiff's Procedural Due Process Rights to Notice**
**[U.S. Const. amend. XIV § 1]**

**Claims 1-2: Portland's Violations of Plaintiff's Due Process Rights**

136. Plaintiff hereby repeats and realleges paragraphs 1-135.

137. Due process requires governments to attempt notice that is "reasonably calculated" to inform interested parties of an impending property deprivation. Jones v. Flowers, 547 U.S. 220, 226 (2006).

138. Portland towed and impounded Plaintiff's car.

139. Portland towed Plaintiff's car without providing any notice of the tow.

140. Portland towed Plaintiff's car knowing that Plaintiff had not received notice of the tow.

141. Portland only attempted notice of the tow *after* the tow, via postal mail.

142. Portland's actions complied with Portland's towing policies.

143. Portland's attempts at notice "must be tested with reference to the existence of 'feasible and customary' alternatives." Greene v. Lindsey, 456 U.S. 444, 454 (1982).

144. Portland could have easily provided Plaintiff immediate notice of the tow using commonplace communication technologies—telephone, email, text message—but did not.

145. Portland could have easily provided Plaintiff immediate notice of the tow using Portland's own mobile parking app, but did not.

146. Portland could have easily provided Plaintiff immediate notice of the tow using KnowTow, a free online tow-notification service, but did not.

147. Portland's policy is to tow without using any of these communication methods to provide immediate notice.

148. Notice is reasonably calculated if the provider of notice has acted "as one desirous of actually informing" the intended recipients. Jones, 547 U.S. at 229.

149. Someone desirous of actually informing Plaintiff of the tow would not ignore communication methods that provide immediate, actual notice.

150. Portland ignored these communication methods.

151. Portland did not act as one desirous of actually informing Plaintiff of the tow.

152. Portland, therefore, did not provide notice reasonably calculated to inform Plaintiff.

153. **Claim 1:** Portland is liable under 42 U.S.C. § 1983 for towing Plaintiff's car without first providing notice when Portland could have easily provided immediate notice of the tow via phone, email, text message, or its own mobile parking app.

154. **Claim 2:** Portland is liable under 42 U.S.C. § 1983 for towing Plaintiff's car without first providing notice when Portland could have easily provided immediate notice of the tow via KnowTow.


**Claims 3-4: Officers McHenry and Earle's Violations of Plaintiff's Due Process Rights**

155. Plaintiff hereby repeats and realleges paragraphs 1-135.

156. Due process requires government agents to attempt notice that is "reasonably calculated" to inform interested parties of government action against their property interests. Jones, 547 U.S. at 226.

157. Officers McHenry and Earle are agents of Portland.

158. Officers McHenry and Earle acted against Plaintiff's property interests when they cited and towed Plaintiff's car.

159. Officers McHenry and Earle did not attempt to provide notice of their actions except by posting materials on Plaintiff's car.

160. Officers McHenry and Earle cited and towed Plaintiff's car knowing that Plaintiff had not received notice.

161. Officers McHenry and Earle's attempts at notice "must be tested with reference to the existence of 'feasible and customary' alternatives." Greene, 456 U.S. at 454.

162. Officers McHenry and Earle could have easily provided Plaintiff immediate notice of their actions using commonplace communication technologies—telephone, email, text message—but did not.

163. Officers McHenry and Earle could have easily provided Plaintiff immediate notice of their actions using Portland's own mobile parking app, but did not.

164. Officers McHenry and Earle could have easily provided Plaintiff immediate notice of their actions using KnowTow, a free online tow-notification service, but did not.

165. Notice is reasonably calculated if the provider of notice has acted "as one desirous of actually informing" the intended recipients. Jones, 547 U.S. at 229.

166. Someone desirous of actually informing Plaintiff of their actions would not ignore communication methods that provide immediate, actual notice.

167. Officers McHenry and Earle ignored these communication methods.

168. Officers McHenry and Earle did not act as though they were desirous of actually informing Plaintiff of their actions.

169. Officers McHenry and Earle, therefore, did not provide notice reasonably calculated to inform Plaintiff.

170. **Claim 3:** Officer McHenry is liable under 42 U.S.C. § 1983 for citing Plaintiff's car without first providing notice when he easily could have.

171. **Claim 4:** Officer Earle is liable under 42 U.S.C. § 1983 for citing and towing Plaintiff's car without first providing notice when he easily could have.

### Claim 5: Retriever Towing's Violation of Plaintiff's Due Process Rights

172. Plaintiff hereby repeats and realleges paragraphs 1-135.

173. Due process requires government agents to attempt notice that is "reasonably calculated" to inform interested parties of government action against their property interests. Jones, 547 U.S. at 226.

174. Retriever Towing is an agent of Portland.

175. Retriever Towing towed Plaintiff's car.

176. When it towed Plaintiff's car, Retriever Towing was acting under color of state law.

177. Retriever Towing never attempted to provide notice of the tow to Plaintiff.

178. Retriever Towing had no basis to believe that Portland had provided such notice.

179. Retriever Towing had no basis to believe that Plaintiff had received such notice.

180. Retriever Towing towed Plaintiff's car without notice.

181. Retriever Towing towed Plaintiff's car when no party had attempted to provide notice of the tow.

182. Retriever Towing towed Plaintiff's car when Plaintiff had no notice.

183. **Claim 5:** Retriever Towing is liable under 42 U.S.C. § 1983 for towing Plaintiff's car without notice.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants as follows:

1. **Declaratory Relief:** That the Court

    a. Declare that Portland violated Plaintiff's right to notice under the Fourteenth Amendment's Due Process Clause.

    b. Declare that Officer McHenry violated Plaintiff's right to notice under the Fourteenth Amendment's Due Process Clause.

    c. Declare that Officer Earle violated Plaintiff's right to notice under the Fourteenth Amendment's Due Process Clause.

    d. Declare that Retriever Towing violated Plaintiff's right to notice under the Fourteenth Amendment's Due Process Clause.

    e. Declare that Portland City Code pertaining to notice of city-ordered tows is unconstitutional to the degree that it violates the Fourteenth Amendment's Due Process Clause.

    f. Declare that Plaintiff, as a KnowTow user, was entitled to receive notice before his car was towed.

g. Declare that notice of a tow via postal mail *after* a tow is unconstitutional where pre-towing notice is readily achievable.

2. **Money Damages and Costs:** That the Court

   a. Award Plaintiff damages for violations of his constitutional rights.

   b. Award Plaintiff the amount Plaintiff paid to Retriever Towing to regain possession of his vehicle.

   c. Award Plaintiff the outstanding amount due for the citations issued by Officers McHenry and Earle.

   d. Award Plaintiff full recovery of litigation costs.

3. **Injunctive Relief:** That the Court

   a. Enjoin Portland from towing vehicles without first providing notice reasonably calculated to inform interested parties of the tow.

   b. Order Portland to attempt notice via telephone, text message, email, its own mobile parking app, and/or KnowTow before towing a vehicle in a non-emergency situation where such methods of communication are readily accessible.

Respectfully submitted,

Dated: January 26, 2018

Andrew Grimm
Pro Se Plaintiff