Andrew Grimm
agrimm3@gmail.com
15287 Pepperwood Drive
Omaha, NE 68154
Tel: (650) 422-8035
Pro Se Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

**ANDREW GRIMM**,
    Plaintiff,

    v.

**CITY OF PORTLAND, et al.**,
    Defendants.

Case No.: 3:18–cv–00183–MO

Plaintiff Andrew Grimm's
OPPOSITION TO THE RULE 12(b)(6)
MOTION TO DISMISS
filed by Defendant Retriever Towing

Request for Oral Argument

      Plaintiff's Complaint (Dkt. #1) pleads factual allegations that sufficiently establish legal claims entitling him to relief. Plaintiff, therefore, respectfully requests that this Court deny Defendant Retriever Towing's Rule 12(b)(6) Motion to Dismiss ("Motion" or "Motion to Dismiss") (Dkt. #7).

# TABLE OF CONTENTS

I. Nature of the Case .................................................................................................... 1

II. Facts as Alleged in the Complaint............................................................................ 3

III. Argument ................................................................................................................. 5

    A.     The Complaint Sufficiently Pleads a Legal Claim for a Failure to Provide Constitutionally Required Notice. .......................................................... 5

    B.     The Well-Settled *Mullane* Standard Determines the Constitutional Sufficiency of Notice. ............................................................................ 6

    C.     Notice of a Tow Must Meet the *Mullane* Standard.............................................. 7

    D.     The *Mullane* Standard Requires Governments to Act as One Desirous of Actually Informing the Intended Recipient. .......................................... 8

    E.     Here, Defendants' Attempts at Notice of the Tow Fell Far Short of What Is Required Under the *Mullane* Standard.............................................. 9

          i.     Someone desirous of actually informing would not rely solely on methods that are proving ineffective to provide actual notice. .................. 9

          ii.     Someone desirous of actually informing would not rely solely on methods substantially less likely to achieve notice than alternative methods. .................................................................................. 11

          iii.     Someone desirous of actually informing would choose to provide actual notice if they easily could............................................ 13

    F.     After *Jones*, the *Mullane* Standard Explicitly Requires Further Attempts at Notice When the Sender Has Reason to Believe That Previous Attempts Have Failed. ...................................................................................... 15

    G.     Defendants' Attempts at Notice Clearly Violated the Principle Established in *Jones*. ................................................................................................ 16

    H.     Defendants' Attempts at Notice Were Constitutionally Insufficient, Regardless of Whether They Are Reasonable Generally. ................................... 17

    I.     This Court Does Not Need to Endorse Any Particular Form of Notice to Find That Defendants' Attempts at Notice Failed *Mullane*................................. 18

IV. Response to Retriever Towing's Arguments.......................................................... 19

A.  Retriever Towing's Arguments Have Been Addressed, and Rejected, by the Supreme Court in the *Mullane* through *Jones* Line of Cases. ........................ 20

    i.  Common Knowledge That Illegally Parked Cars May Be Towed Does Not Excuse the Constitutional Obligation to Provide Notice of the Tow. ........................................................................................ 20

    ii.  *Clement* Does Not Hold that Parking Citations Are Per Se Notice of a Tow. ................................................................................................ 22

    iii.  In This Case, the Parking Citations Were Not Notice of the Tow. ........... 23

    iv.  Plaintiff Took Actions to Safeguard His Property Interests But Was Not Required to Under *Mullane*. ...................................................... 24

B.  Instead of Applying *Mullane*, the Cases Cited by Retriever Towing Apply the Wrong Legal Standard. .................................................................................... 25

C.  The Motion Should Still Be Denied Even If the *Mathews* Balancing Test Applied. .............................................................................................................. 28

    i.  Here, on the first *Mathews* factor, the private interest is stronger than in the cases cited by Retriever Towing. ............................................. 28

    ii.  Here, on the second *Mathews* factor, the right of notice is of paramount value and notice is readily achievable using commonplace technology. ......................................................................... 29

    iii.  Here, on the third *Mathews* factor, the government's interest is advanced, not hindered, by pre-towing notice. ......................................... 31

D.  Plaintiff Does Not Assert That Any Particular Form of Notice Was Required. ............................................................................................................ 33

V. Conclusion .................................................................................................................... 34

# TABLE OF AUTHORITIES

## *CASES*

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ..................................................................... 5

Boddie v. Connecticut, 401 U.S. 371 (1971) ......................................................... 17

City of Los Angeles v. David, 538 U.S. 715 (2003) ................................................ 7

Clement v. City of Glendale, 518 F.3d 1090 (9th Cir. 2008) ......................... passim

Cleveland Bd. of Education v. Loudermill, 470 U.S. 532 (1985) ......................... 14

Cook v. Brewer, 637 F.3d 1002 (9th Cir. 2011) ...................................................... 5

Covey v. Town of Somers, 351 U.S. 141 (1956) .................................................. 17

Dusenbery v. United States, 534 U.S. 161 (2002) ................................... 6, 7, 8, 26

Fuentes v. Shevin, 407 U.S. 67 (1972) .................................................................... 7

Goichman v. Rheuban Motors, Inc., 682 F.2d 1320 (9th Cir. 1982) ....................... 7

Greene v. Lindsey, 456 U.S. 444 (1982) ......................................................... passim

Jones v. Flowers, 547 U.S. 220 (2006) ........................................................... passim

Lair v. Bullock, 697 F.3d 1200 (9th Cir. 2012) .................................................... 27

Lambert v. California, 355 U.S. 225 (1957) ......................................................... 30

Lone Star Sec. & Video, Inc. v. City of Los Angeles, 584 F.3d 1232 (9th Cir. 2009) ....... passim

Long v. Gill, 981 F. Supp. 2d 966 (D. Or. 2013) ................................................. 20

Mennonite Bd. of Missions v. Adams, 462 U.S. 791 (1983) ................... 6, 8, 11, 24

Miller v. Gammie, 335 F.3d 889 (9th Cir. 2003) ................................................. 27

Miranda v. City of Cornelius, 429 F.3d 858 (9th Cir. 2005) ................................ 32

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950) ........... passim

Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80 (1988) ...................................... 21

Schlereth v. Hardy, 280 S.W.3d 47 (Mo. 2009) .............................................. 6, 16

Schroeder v. City of New York, 371 U.S. 208 (1962) ............................................ 18

Scofield v. City of Hillsborough, 862 F.2d 759 (9th Cir. 1988) .................................... passim

Sniadach v. Family Fin. Corp. of Bay View, 395 U.S. 337 (1969).......................................... 17

Snider Int'l Corp. v. Town of Forest Heights, 739 F.3d 140 (4th Cir. 2014) ........................... 26

Strong v. Bd. of Educ., 902 F.2d 208 (2d Cir. 1990) ............................................... 28

Stypmann v. City of San Francisco, 557 F.2d 1338 (9th Cir. 1977) ......................................... 7

Sutton v. City of Milwaukee, 672 F.2d 644 (7th Cir. 1982) .................................................. 30

Taylor v. Yee, 136 S. Ct. 929 (2016) (Alito, J., concurring in denial of cert.) ........................... 2

Taylor v. Yee, 780 F.3d 928 (9th Cir. 2015) ....................................................... 16

Texaco, Inc. v. Short, 454 U.S. 516 (1982) ....................................................... 11

United States v. James Daniel Good Real Prop., 510 U.S. 43 (1993) ................................. 6, 30

United States v. Kafka, 222 F.3d 1129 (9th Cir. 2000) ......................................... 20

Walker v. City of Hutchinson, 352 U.S. 112 (1956).................................................. 2

Wyatt v. Cole, 504 U.S. 158 (1992) ..................................................... 7

Yagman v. Garcetti, 852 F.3d 859 (9th Cir. 2017) ................................................. 20

Yi Tu v. Nat'l Transp. Safety Bd., 470 F.3d 941 (9th Cir. 2006) .......................................... 12

## STATUTES

42 U.S.C. § 1983 ..................................................................................... 1

# I. NATURE OF THE CASE

When governmental authority is used to deprive a citizen of a property interest, that citizen has a constitutionally guaranteed right to notice of the property deprivation. If that citizen does not receive constitutionally sufficient notice, he has a cause of action under § 1983. See 42 U.S.C. § 1983. Pursuant to § 1983, "*[e]very* person" acting under color of state law, who deprived that citizen of his property without sufficient notice, shall be liable. Id. (emphasis added).

The Supreme Court has clearly defined the parameters of what constitutes sufficient notice of a property deprivation. The seminal case on notice, Mullane v. Central Hanover Bank & Trust Co., establishes that those providing notice must act like they are "desirous of actually informing." 339 U.S. 306, 315 (1950). Thus, in attempting notice of a property deprivation, the sender's goal must be "actual notice." See Greene v. Lindsey, 456 U.S. 444, 449 (1982). And, when the sender has reason to believe that his prior attempts at notice have failed to achieve actual notice, he cannot simply execute the property deprivation. Rather, the sender must first take additional steps to provide notice, if he can. Jones v. Flowers, 547 U.S. 220, 234 (2006).

Here, Defendants towed Plaintiff's car without providing constitutionally sufficient notice of the tow. Prior to the tow, there was good reason to believe that Plaintiff had not received actual notice of the tow because the materials that Defendants posted on Plaintiff's windshield piled up, unseen and undisturbed. Despite many options to easily provide Plaintiff with immediate, actual notice of the tow, Defendants chose not to use any of these options. Instead, Defendants simply towed Plaintiff's car without providing notice. While impoundment fees accrued, Defendants then waited twenty-four hours to even put a letter in the mail. This conduct fell far short of what Mullane demands.

In attempting to provide notice, many governments "still rely on decidedly old-fashioned methods that are unlikely to be effective." <u>Taylor v. Yee</u>, 136 S. Ct. 929, 930 (2016) (Alito, J., concurring in denial of cert.). "As advances in technology make it easier and easier to identify and locate property owners, many States appear to be doing less and less to meet their constitutional obligation to provide adequate notice before [seizing] private property." <u>Id.</u> (Alito, J., concurring in denial of cert.). This case is a prime example.

In this case, the City of Portland ("Portland") and its agents could have easily provided Plaintiff with immediate, actual notice of the tow. Portland and its agents could have emailed, called, or texted Plaintiff. They chose not to, even though they had Plaintiff's contact information available. Portland and its agents could have used Portland's own mobile parking app to notify Plaintiff of the tow. They chose not to, even though Plaintiff and his car were registered with Portland's own mobile parking app and even though Plaintiff had previously received notifications about his car on this app. Portland and its agents could have used KnowTow—a free website that enables governments to send immediate tow notifications to vehicle owners—to notify Plaintiff of the tow. They chose not to. Or, Portland could have created its own city website that would enable it to send immediate tow notifications to vehicle owners, as Boston, Massachusetts, has done. Portland has chosen not to.

In this case, given the plethora of options available to easily provide immediate, actual notice of the tow, "there seem to be no compelling or even persuasive reasons why such direct notice cannot be given." <u>Walker v. City of Hutchinson</u>, 352 U.S. 112, 116 (1956).

## II. FACTS AS ALLEGED IN THE COMPLAINT

Before towing Plaintiff's car,[1] Defendants could have easily provided Plaintiff with immediate, actual notice of the tow. Pl.'s Compl. ¶¶ 66-80. They chose not to. Id. ¶¶ 81-87.

Plaintiff had taken actions that would have made contacting him about his car easy. He had downloaded Portland's own mobile parking app ("Parking Kitty")[2] to his iPhone and had registered his car with the app. Id. ¶¶ 11-14. As part of registering his car with Parking Kitty, Plaintiff had provided his email address and cellphone number to Parking Kitty, at Parking Kitty's request. Id. ¶¶ 15-16.

Plaintiff had also registered his car with knowtow.net, a website enabling governments to send free tow notifications ("KnowTow"). Id. ¶¶ 17-19. Portland was aware of KnowTow and how to use it. Id. ¶ 20. Plaintiff had prominently displayed decals on his car signaling that his car was registered with KnowTow. Id. ¶ 22. Portland was also aware that cars displaying KnowTow decals were registered with KnowTow. Id. ¶ 21. In short, Portland knew it could have contacted Plaintiff about the tow using KnowTow. Id. ¶ 23.

Thus, Defendants had many options to provide immediate, actual notice of the tow: email, text message, phone call, Parking Kitty, or KnowTow. Id. ¶¶ 66-87. Any of these options would have provided notice immediately. Id. ¶ 106. Any of these options would have provided notice directly to the iPhone in Plaintiff's pocket, no matter where Plaintiff was. Id. ¶¶ 108, 111.

---

[1] Plaintiff is not the title owner of this vehicle, but has had sole possession of it and been the sole regular user of it for over a decade. Before Retriever Towing filed its Motion, Plaintiff and counsel for Retriever Towing had communicated about the status of the vehicle's title. Plaintiff's ability to sue is not raised in Retriever Towing's Motion.

[2] Portland's own website describes this app as "Parking Kitty: Portland's Mobile Parking App." Parking Kitty: Portland's Mobile Parking App, City of Portland Website, https://www.portlandoregon.gov/transportation/73554 (Mar. 5, 2018).

And yet, Defendants only attempted to provide notice by posting materials on Plaintiff's windshield. Id. ¶¶ 33-40.

As these materials piled up unseen and unclaimed, Defendants merely persisted in posting more materials without trying any different method of informing Plaintiff of the tow. Id. ¶¶ 50-65. After posting materials on Plaintiff's windshield had apparently failed to provide actual notice, Portland and its officers stopped trying and simply ordered the tow of Plaintiff's car without attempting any different, more effective methods of providing notice. Id. ¶¶ 41-49.

Thus, Defendants towed Plaintiff's car despite having good reason to believe that Plaintiff had not received actual notice of the tow.[3] Id. ¶¶ 55-57, 132-133. A full day *after* Defendants towed Plaintiff's car away without notice, Portland then put a letter in the mail. Id. ¶¶ 101-102. During the four days this letter took to arrive, impoundment fees accrued. Id. ¶ 103.

When Portland wanted to reach Retriever Towing to request the tow, Portland got in touch within the hour. Id. ¶¶ 41-45. This effective communication stands in sharp contrast to how Portland attempted to inform Plaintiff of the tow: Portland relied upon an effective commonplace method of communication to provide Retriever Towing immediate, actual notice of its decision to tow. Id. ¶¶ 88-95.

Moreover, Portland relies upon methods of instant communication regularly. To conduct its public affairs, Portland uses telephones, email, mobile applications, and the internet. Id. ¶ 67. Portland is aware that these methods can immediately contact those they want to contact and can convey information Portland wants to convey. Id. ¶¶ 68-70. Nonetheless, Portland treats notice of a tow differently, relying on antiquated methods to attempt notice that are both more

---

[3] Retriever Towing, for its part, made no attempt to provide Plaintiff with notice or to confirm that notice had been provided. Id. ¶¶ 130-135.

burdensome to use and far less effective than the immediate, actual notice offered by commonplace alternatives. Id. ¶¶ 71-73.

In sum, Defendants gave up trying to provide notice of the tow after posting citations had obviously failed. At that point, they could have easily provided immediate, actual notice of the tow. Instead, Defendants towed Plaintiff's car, indifferent to whether or not Plaintiff knew.

### III. ARGUMENT

**A. The Complaint Sufficiently Pleads a Legal Claim for a Failure to Provide Constitutionally Required Notice.[4]**

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011). On this motion, courts "accept as true all of the allegations contained in a complaint" except for "legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim may be dismissed only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Cook, 637 F.3d at 1004 (citation omitted). A complaint survives a Rule 12(b)(6) motion, however, when the complaint contains "sufficient factual matter" to state a plausible legal claim. Iqbal, 556 U.S. at 678 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Here, the Complaint contains sufficient factual allegations to support claims of a failure to provide constitutionally mandated notice under the well-settled Mullane standard. Therefore, Retriever Towing's Motion should be denied.

---

[4] Retriever Towing requests judicial notice of the fact that, although Plaintiff appears pro se before this Court, Plaintiff is a lawyer admitted to the Washington State Bar Association, WSBA #51486. Dkt. #7 at 3 n.1. Plaintiff does not object to judicial notice of this fact. Moreover, Plaintiff agrees with Retriever Towing that Plaintiff's Complaint is not due the special deference afforded to pleadings filed by non-lawyer pro se parties. Cf. Dkt. #7 at 2.

---

**B.  The Well-Settled <u>Mullane</u> Standard Determines the Constitutional Sufficiency of Notice.**

The Fourteenth Amendment prohibits the government from depriving any person of property without "due process of law." <u>Dusenbery v. United States</u>, 534 U.S. 161, 167 (2002). Notice of a property deprivation "is central to the Constitution's command of due process." <u>United States v. James Daniel Good Real Prop.</u>, 510 U.S. 43, 53 (1993). To determine whether notice of a property deprivation was constitutionally sufficient, <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306 (1950), "supplies the appropriate analytical framework." <u>Dusenbery</u>, 534 U.S. at 167.

Applying <u>Mullane</u> to questions of notice is a "well-settled practice." <u>Dusenbery</u>, 534 U.S. at 168. "Since <u>Mullane</u> was decided, [the Supreme Court] ha[s] regularly turned to it when confronted with questions regarding the adequacy of the method used to give notice." <u>Id.</u> In fact, the Supreme Court "has adhered unwaiveringly [sic] to the principle announced in <u>Mullane</u>." <u>Mennonite Bd. of Missions v. Adams</u>, 462 U.S. 791, 797 (1983). Thus, "those who use governmental authority to take property [...] will have to take heed of the notice requirements of the <u>Mullane</u> through <u>Jones</u> line of constitutional cases." <u>Schlereth v. Hardy</u>, 280 S.W.3d 47, 53 (Mo. 2009).

In short, <u>Mullane</u> "and its progeny" govern notice. <u>Williams v. Mukasey</u>, 531 F.3d 1040, 1042 (9th Cir. 2008).

**C. Notice of a Tow Must Meet the <u>Mullane</u> Standard. [5]**

This is a case about notice of a tow. The Supreme Court's "leading cases on notice" have recognized that governments must provide notice to "owners of […] vehicles." <u>Jones</u>, 547 U.S. at 229. Questions of notice are governed by the <u>Mullane</u> standard. <u>Dusenbery</u>, 534 U.S. at 167-68. Thus, notice of a tow must meet the <u>Mullane</u> standard.

That a tow is usually temporary does not matter. It is "well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment." <u>Fuentes v. Shevin</u>, 407 U.S. 67, 84–85 (1972). The Supreme Court has identified "a temporary deprivation of the use of the automobile" as a "serious harm" to the vehicle owner's property interests. <u>City of Los Angeles v. David</u>, 538 U.S. 715, 717 (2003).

The "uninterrupted use" of one's vehicle is significant. <u>Goichman v. Rheuban Motors, Inc.</u>, 682 F.2d 1320, 1324 (9th Cir. 1982). A "person's ability to make a living and his access to both the necessities and amenities of life may depend upon the availability of an automobile when needed." <u>Stypmann v. City of San Francisco</u>, 557 F.2d 1338, 1342-43 (9th Cir. 1977). In short, "removal of an automobile is a big deal." <u>Clement v. City of Glendale</u>, 518 F.3d 1090, 1094 (9th Cir. 2008).

As these cases make clear, towing is a significant property deprivation that triggers notice rights under the Fourteenth Amendment. And, under the Fourteenth Amendment, notice of a property deprivation must be provided in accordance with the <u>Mullane</u> standard.

---

[5] Private entities can be subject to suit under § 1983. 42 U.S.C. § 1983 ("*Every* person" (emphasis added)). Private defendants are subject to suit if their conduct can be "fairly attributable to the State." <u>See</u> <u>Wyatt v. Cole</u>, 504 U.S. 158, 162 (1992) (internal quotations omitted). Retriever Towing's tow was fairly attributable to Portland. Regardless, Retriever Towing does not raise this issue in its Motion.

**D.  The <u>Mullane</u> Standard Requires Governments to Act as One Desirous of Actually Informing the Intended Recipient.**

<u>Mullane</u> requires notice of a property deprivation to be "reasonably calculated, under all the circumstances, to apprise interested parties" of the governmental action against their property interests. <u>Mullane</u>, 339 U.S. at 314. Under this standard, the person providing notice must act "as one desirous of actually informing" interested parties. <u>Id.</u> at 315.

A sender desirous of actually informing an interested party would find it "in *his* interest to convey information." <u>Id.</u> at 320 (emphasis added). He would undertake "due diligence" to identify the recipient. <u>See id.</u> at 317. He would employ "reasonably diligent efforts" to ascertain the recipient's "whereabouts." <u>Mennonite</u>, 462 U.S. at 798 n.4. He would consider "unique information" about the recipient. <u>Jones</u>, 547 U.S. at 230. The form of his notice would "convey the required information." <u>Mullane</u>, 339 U.S. at 314.  "Of course," he would consider "alternatives and supplements to the form of notice chosen." <u>Greene</u>, 456 U.S. at 454.

When needed, someone desirous of actually informing would take "additional reasonable steps." <u>Jones</u>, 547 U.S. at 234. He would not shy away from "relatively easy options" to supplement his earlier unsuccessful attempts at notice of a property deprivation. <u>Id.</u> at 236. Critically for this case, no one desirous of actually informing another "would simply shrug his shoulders" if he suspects his attempts at notice have failed and "say 'I tried.'" <u>Id.</u> at 229. Instead, "such a person would take further reasonable steps [to inform the intended recipient] if *any* were available." <u>Id.</u> at 230 (emphasis added).

Under the <u>Mullane</u> standard, the "ideal" is "actual notice." <u>Greene</u>, 456 U.S. at 449. The government, and its agents, "*must attempt to provide* actual notice." <u>Dusenbery</u>, 534 U.S. at 170 (emphasis in original).

**E. Here, Defendants' Attempts at Notice of the Tow Fell Far Short of What Is Required Under the <u>Mullane</u> Standard.**

The <u>Mullane</u> standard requires the person providing notice to act "as one desirous of actually informing" the intended recipient. <u>Mullane</u>, 339 U.S. at 315. A person "who actually desired to inform" would not rely solely on methods of attempting notice that are proving ineffective. <u>See Jones</u>, 547 U.S. at 229. A person who actually desired to inform would not choose a method of attempting notice that is "substantially less likely to bring home notice" than available alternatives. <u>Mullane</u>, 339 U.S. at 315. Indeed, a person who actually desired to inform would provide actual notice if they easily could. <u>See Greene</u> 456 U.S. at 449.

Here, none of the Defendants acted as one desirous of actually informing Plaintiff of the tow. Defendants relied solely on methods that were proving ineffective. Defendants ignored methods that were substantially more likely to inform Plaintiff of the tow than methods they used. In fact, Defendants chose not to provide actual notice when they easily could have. Thus, Defendants' attempts at notice were insufficient under <u>Mullane</u>.

*i. Someone desirous of actually informing would not rely solely on methods that are proving ineffective to provide actual notice.*

The <u>Mullane</u> standard does not tolerate "continued exclusive reliance on an ineffective means" of providing notice. <u>Greene</u>, 456 U.S. at 455. A person "who actually desired to inform" would not rely solely on methods of attempting notice that are proving ineffective to actually inform the intended recipient. <u>See Jones</u>, 547 U.S. at 229.

Exclusive reliance on what was an apparently ineffective means of providing notice is exactly what happened here. Defendants initially attempted to provide notice by posting materials on Plaintiff's car. Pl.'s Compl. ¶¶ 33-38. These materials remained unseen by Plaintiff and undisturbed on the windshield, giving good reason to suspect that posting notice had failed. Id. ¶¶ 40, 50-65.

In response to the apparent failure of these postings to actually notify Plaintiff of the tow, Defendants simply posted more materials on Plaintiff's windshield—a second, a third, a fourth time, etc.—without trying anything else until after the tow. That is not what someone desirous of actually informing Plaintiff would do when they had other options available. This is especially so when Defendants' earlier, ineffective attempts at posting notice on Plaintiff's windshield could have easily been supplemented by an email, text message, phone call, Parking Kitty alert, or KnowTow.

Someone who wanted to get in touch would not have persisted with ineffective posting alone when better methods were readily available. Under Mullane, such persistence without more is a constitutional violation. See Greene, 456 U.S. at 453 ("But whatever the efficacy of posting in many cases, it is clear that, in the circumstances of this case, merely posting notice on an apartment door does not satisfy minimum standards of due process.").

ii.   *Someone desirous of actually informing would not rely solely on methods substantially less likely to achieve notice than alternative methods.*

The Mullane standard requires that the form of notice chosen "is not substantially less likely to bring home notice than other of the feasible and customary substitutes." Mullane, 339 U.S. at 315.

Under Mullane, whether the government's notice is constitutionally sufficient "must be tested with reference to the existence of 'feasible and customary' alternatives." Greene, 456 U.S. at 454. Feasible and customary alternatives include any method of communication "upon which prudent men will ordinarily rely in the conduct of important affairs." Id. at 455. Therefore, in evaluating an attempt at notice under Mullane, "it is instructive […] to ask whether it would satisfy a prudent man of business, counting his pennies but finding it in his interest to convey information." Mullane, 339 U.S. at 320.

Such a prudent business person would not rely upon ineffective methods "to reach those who could easily be informed by other means at hand." Texaco, Inc. v. Short, 454 U.S. 516, 535 (1982). And, where old ways are "less reliable," such a prudent business person would embrace new "inexpensive and efficient" methods. Mennonite, 462 U.S. at 799.

Here, Defendants had many "inexpensive and efficient" alternative methods of attempting notice available to them: email, text message, phone call, Parking Kitty, and KnowTow. These methods were far more likely to bring home notice than postings and post-tow mailing—the only methods that Defendants used to attempt notice in this case.

The Supreme Court has recognized the limitations of postings and postal mail: "mail is far from the ideal means of providing the notice the Due Process Clause of the Fourteenth

Amendment requires." <u>Greene</u>, 456 U.S. at 455 n.9. And, the Court "has previously concluded that posting is an inherently unreliable method of notice." <u>Jones</u>, 547 U.S. at 248 (Thomas, J., dissenting) (citing <u>Greene</u>, 456 U.S. at 453-54). Here, Defendants' choice to rely solely on postings and post-deprivation mail is constitutionally insufficient, given the alternatives.

When time is of the essence, no one desirous of actually informing would choose postings or mail, rather than attempting notice via immediate methods of communication. A person desirous of actually informing "would not resort to a 'mechanical adherence' to the minimum form of notice authorized by regulation in the very instance when timely notice is most crucial." <u>Yi Tu v. Nat'l Transp. Safety Bd.</u>, 470 F.3d 941, 946 (9th Cir. 2006).

Today, no serious business person would use mail, after the fact, when an important, message needed to be quickly communicated. <u>Mullane</u>, 339 U.S. at 319–20 ("In some situations the law requires greater precautions in its proceedings than the business world accepts for its own purposes. In few, if any, will it be satisfied with less."). Indeed, such a business person would not rely on a method of communication that is substantially less effective at actually informing the intended recipient.

That the constitutional acceptability of forms of notice will evolve with advances in communication technologies has long been recognized by the Supreme Court. <u>Mullane</u> rejected notice by newspaper publication precisely because the advent and common usage of mail made notice by publication comparatively less likely to provide actual notice. <u>See</u> <u>Mullane</u> 339 U.S. at 319. "However it may have been in former times," today there are new technologies that offer even more "efficient and inexpensive means of communication." <u>Id.</u> The advent and ubiquity of instantaneous, electronic and telephonic methods of communication make posting materials and postal mail substantially less likely to provide actual notice by comparison.

In this case, Portland's attempts at notice by posting and post-tow mail are "inadequate, not because in fact [they] fail[] to reach everyone, but because under the circumstances [they are] not reasonably calculated to reach those [like Plaintiff] who could easily be informed by other means at hand." <u>Mullane</u>, 339 U.S. at 319.

>       iii.     **Someone desirous of actually informing would choose to provide actual notice if they easily could.**

Under <u>Mullane</u>, the "ideal" is "actual notice." <u>Greene</u>, 456 U.S. at 449. Within the "limits of practicability," governments and their agents must pursue actual notice. <u>Mullane</u> 339 U.S. at 318. When actual notice is inexpensive and easy, "the reasons disappear for resort" to anything less. <u>Id.</u>

Here, Defendants could have easily provided immediate, actual notice of the tow. Thus, under <u>Mullane</u>, they should have. Any of five options—email, text message, phone call, Parking Kitty, or KnowTow—would have provided immediate, direct, actual notice of the tow. None of these options strain the limits of practicability. In fact, they would have been accomplished with the push of a few buttons.

The straightforward <u>Mullane</u> test asks a rather simple question: what would someone who wanted to "actually inform" this recipient do? It strains credulity to suggest that someone who actually desired to give notice would totally forgo a multitude of options for immediate, actual notice. It particularly strains credulity when Portland somehow managed to contact Retriever Towing of its decision to tow in under an hour, but failed to contact Plaintiff.

The better conclusion is that Defendants were indifferent to, not desirous of, providing Plaintiff with actual notice. Instead, they were content to comply with their internal policies. But,

the right to notice "is conferred, not by legislative grace, but by constitutional guarantee."

Cleveland Bd. of Education v. Loudermill, 470 U.S. 532, 541 (1985).

The notice requirement is "a matter of federal law" and is "not diminished by the fact that the State may have specified its own procedures that it may deem adequate." Id. In this case, a mechanical adherence to the forms of notice authorized by Portland's policies was "mere *pro forma* notice." See Greene, 456 U.S. at 454. Portland and its agents did not take their constitutional duty to provide Plaintiff with notice seriously.

The City of Boston, Massachusetts, however, is a study in contrast. It is an example of a city that takes seriously its constitutional obligations to provide notice of tows: Boston has developed its own tow-notification website that provides email alerts, text-message alerts, and phone-call alerts.[6] These alerts are, in Boston's own words, "intended to provide timely notification of the tow" and to put drivers "in a position to retrieve their vehicles quickly and avoid the accumulation of storage charges."[7]

Portland and its agents, by contrast, towed Plaintiff's car without relying on any commonplace methods of immediate communication. After the tow, Portland and its agents then waited twenty-four hours, while towing-storage charges accrued, before even putting a letter in the mail. This letter took four days to arrive, as more towing fees accrued. Again "mail is far from the ideal means of providing the notice the Due Process Clause of the Fourteenth Amendment requires." Greene, 456 U.S. at 455 n.9.

---

[6] Plaintiff respectfully requests judicial notice of Boston's tow-notification website. See Towed Car Alerts, City of Boston Website, https://www.cityofboston.gov/towing/alerts/ (Mar. 5, 2018).
[7] Towing Alerts FAQ, City of Boston Website, https://www.cityofboston.gov/towing/alerts/faq.asp (Mar. 5, 2018).

Ultimately, "the default rule is advance notice and the state must present a strong justification for departing from the norm." Clement, 518 F.3d at 1094. Even if Portland did not care enough to create its own tow-notification website, it is hard to see how Portland and its agents could refuse to use one freely provided to them, namely KnowTow, and still claim to be "desirous of actually informing" Plaintiff of the tow.

**F.  After Jones, the Mullane Standard Explicitly Requires Further Attempts at Notice When the Sender Has Reason to Believe That Previous Attempts Have Failed.**

One Supreme Court case applying the Mullane standard—Jones v. Flowers, 547 U.S. 220 (2006)—is crucial here. Jones clearly establishes that more must be done when there is good reason to believe that prior efforts at notice have failed to provide actual notice. Id. at 229.

In Jones, Arkansas attempted to warn a homeowner about past-due property taxes, twice via certified mail and once via a newspaper publication, before Arkansas sold the property at a tax sale to collect taxes. Id. at 223-24. The certified mail had been returned undelivered both times. Id. After the delinquent homeowner sued, the Supreme Court reversed the tax sale, reasoning "[w]e do not think that a person who actually desired to inform […] would do nothing when a certified letter sent to the owner is returned unclaimed." Id. at 229.

The unclaimed certified mail gave Arkansas "good reason to suspect" that the interested party was "no better off than if the notice had never been sent." Id. at 230. Armed with reasons to believe that notice had not been received, taking "no further action is not what someone 'desirous of actually informing' [another] would do." Id. Instead, someone who actually desired to provide notice "would take further reasonable steps if *any* were available." Id. (emphasis added).

Jones clarifies that "the government's knowledge that notice pursuant to the normal procedure was ineffective triggered an obligation on the government's part to take additional steps to effect notice." Id. at 230. "Failure to follow up would be unreasonable," even if the initial attempts at notice of a deprivation were "reasonably calculated to reach their intended recipients." Id. at 229. In Jones, the Supreme Court reversed the tax sale because "rather than taking relatively easy additional steps to effect notice," Arkansas simply deprived a citizen of his property. Id. at 236-37.

Thus, to be constitutionally sufficient, notice of a property deprivation must "pass[] muster under the Mullane–Jones standard." Taylor v. Yee, 780 F.3d 928, 937 (9th Cir. 2015). This is no small demand. Jones "in effect, requires the States to achieve something close to actual notice." Jones, 547 U.S. at 244 (Thomas, J., dissenting). After Jones, providing actual notice where possible is a "matter of prudence" and, perhaps, a matter of "constitutional necessity." Schlereth, 280 S.W.3d at 52.

### G. Defendants' Attempts at Notice Clearly Violated the Principle Established in Jones.

When Defendants towed Plaintiff's car, they had "good reason to suspect […] that [Plaintiff] was 'no better off than if the notice had never been sent.'" Jones, 547 U.S. at 230. Up to that point, the only attempts at notice had been the materials that Defendants saw piling up unclaimed on Plaintiff's windshield. *At that point*, their attempts at notice were constitutionally insufficient. See id. at 229-30.

Thus, when Defendants towed Plaintiff's car, they failed to comply with their "constitutional obligation of notice *before* taking private property." Id. at 232 (emphasis added). Whatever Defendants attempted after towing Plaintiff's car was of no moment: the constitutional

violation of depriving Plaintiff of his property interest without constitutionally sufficient notice had already occurred. Post-towing mailing is immaterial to the issue raised here. See id. at 224 (The pre-deprivation defect in notice was not cured by the post-deprivation "unlawful detainer notice delivered to the property" and personally served.).

In the present case, Defendants violated the principle established in Jones.

### H. Defendants' Attempts at Notice Were Constitutionally Insufficient, Regardless of Whether They Are Reasonable Generally.

The government's obligations under Mullane "are not simply generalized ones." See Boddie v. Connecticut, 401 U.S. 371, 380 (1971). Mullane announces what "the State owes to each individual." Id. "A procedural rule that may satisfy due process […] in general does not necessarily satisfy procedural due process in every case." Sniadach v. Family Fin. Corp. of Bay View, 395 U.S. 337, 340 (1969) (citation omitted). Even when its "general validity […] is beyond question," a government's notice practices may still be "constitutionally invalid as applied" to a specific recipient. Boddie, 401 U.S. at 379.

Under Mullane, the government must "consider unique information about an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case." Jones, 547 U.S. at 230. This unique information about a specific recipient may require attempts at notice "beyond those deemed sufficient in the case of the ordinary" citizen. Covey v. Town of Somers, 351 U.S. 141, 146 (1956). In other words, Mullane does not set out a rule of general reasonableness, but rather requires notice reasonably calculated to reach a specific recipient, i.e., Plaintiff here.

Governments must attempt the type of "personal notice that the rule enunciated in the <u>Mullane</u> case requires." <u>Schroeder v. City of New York</u>, 371 U.S. 208, 213 (1962). Therefore, the government must act "as one desirous of actually informing *the* absentee." <u>Mullane</u>, 339 U.S. at 315 (emphasis added).

That Plaintiff's car was registered with both Parking Kitty and KnowTow is unique information that Defendants cannot ignore. Even if Defendants' attempts at notice would have satisfied <u>Mullane</u> for someone whose car was *not* registered with either Parking Kitty or KnowTow, this would not mean Defendants' attempts satisfy <u>Mullane</u> *as applied to Plaintiff*. It is entirely possible that governments fail to "provide[] constitutionally sufficient notice, despite having followed [a] reasonably calculated scheme." <u>Jones</u>, 547 U.S. at 232.

In sum, "whatever the efficacy of posting *in many cases*, it is clear that, in the circumstances of this case, merely posting notice on [Plaintiff's windshield] does not satisfy minimum standards of due process." <u>Greene</u>, 456 U.S. at 453 (emphasis added).

## I.  This Court Does Not Need to Endorse Any Particular Form of Notice to Find That Defendants' Attempts at Notice Failed <u>Mullane</u>.

To decide this case in Plaintiff's favor, "[i]t suffices for present purposes that […] additional reasonable steps were available for [Defendants] to employ before taking [Plaintiff's] property." <u>Jones</u>, 547 U.S. at 238.

In ruling on this Motion, the Court is not burdened with deciding what form of notice would have been constitutionally sufficient. In fact, it is not this Court's "responsibility to prescribe" the form of notice that Defendants should have adopted. <u>Greene</u>, 456 U.S. at 455 n.9 (holding "*only* that posted notice pursuant to § 454.030 is constitutionally inadequate" (emphasis added)).

<u>Mullane</u> sets a constitutional floor. Courts point out when attempts at notice fall below that constitutional floor. But, the courts leave it up to governments to "determine how to proceed in response to [a judicial ruling] that notice was inadequate." <u>Jones</u>, 547 U.S. at 238.

The functional effect of what might seem like judicial coyness is to incentivize robust attempts at notice. The flexible <u>Mullane</u> standard incentivizes governments to err on the side of caution, to keep up with advances in communication technologies, and to take individual rights to notice seriously.

Perhaps, such incentive is necessary:

> There is no reason to suppose that the State will ever be less than fully zealous in its efforts to secure the tax revenue it needs. The same cannot be said for the State's efforts to ensure that its citizens receive proper notice before the State takes action against them.

<u>Jones</u>, 547 U.S. at 239.

Here, with its fully-functional mobile parking app, Portland seems app-savvy when it comes to collecting parking payments, but rather technophobic when it comes to providing notice of tows. Asking the government to "do a bit more" before it exercises its power to seize vehicles is not too much to ask. <u>Id.</u>

## IV. RESPONSE TO RETRIEVER TOWING'S ARGUMENTS

The central error in Retriever Towing's Motion is a misunderstanding of what kind of notice is required by the Fourteenth Amendment. The notice required here was notice of the impending property deprivation—in this case, notice *of the tow*.

The claims here are as-applied procedural due process claims about the failure to provide constitutionally sufficient notice of the tow itself. These claims are *not* a challenge to the authority of Portland to tow illegally parked vehicles, <u>cf.</u> <u>Long v. Gill</u>, 981 F. Supp. 2d 966, 969

(D. Or. 2013) (deciding whether "impoundment of a vehicle" was an unlawful "seizure under the Fourth Amendment"), or to the procedures of post-tow hearings, cf. Yagman v. Garcetti, 852 F.3d 859, 863 (9th Cir. 2017) (deciding whether the Los Angeles "procedure for contesting parking citations violates procedural due process").

Nor are the claims here about Plaintiff's awareness of the underlying laws, which is presumed. Cf. United States v. Kafka, 222 F.3d 1129, 1131 (9th Cir. 2000) ("The rule that 'ignorance of the law will not excuse' is deep within our law." (citation omitted)). Rather, the claims here are about the failure to provide notice of the tow itself.

Moreover, this case is governed by the Mullane standard, rendering much of the Mathews-based analysis that Retriever Towing relies upon inapposite. But, even if Mathews was the proper test, an application of Mathews here still supports Plaintiff's claims.

## A. Retriever Towing's Arguments Have Been Addressed, and Rejected, by the Supreme Court in the Mullane through Jones Line of Cases.

Retriever Towing raises issues and arguments that have been soundly rejected.

### i. *Common Knowledge That Illegally Parked Cars May Be Towed Does Not Excuse the Constitutional Obligation to Provide Notice of the Tow.*

Retriever Towing's primary argument is that Plaintiff was, or should have been, aware of the risk of being towed. See Dkt. #7 at 5 ("knew the risk"); see also id. ("aware of the risk of a tow"); id. at 6 ("reasonable people generally know" the risk of a tow).

The Supreme Court has already addressed, and rejected, this line of arguments: "the common knowledge that property may become subject to government taking when taxes are not paid does not excuse the government from complying with its constitutional obligation of notice before taking private property." Jones, 547 U.S. at 232. Likewise, the common knowledge that

an illegally parked car may be towed does not excuse Defendants here from complying with their constitutional obligations to provide notice of the tow itself.

An analogy is instructive. It is "widely known that arrestees have the right to remain silent [...] but that knowledge does not excuse a police failure to provide Miranda warnings." Id. at 233. And, as with Miranda warnings, there is a right to notice even if the interested party has "no adequate defense upon the merits." See Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80, 86–87 (1988). Even if a car is illegally parked—a substantive legal issue—that does not eliminate the right to notice of the tow—a procedural legal right.

Along the same lines, Retriever Towing makes much of the allegations that Portland's mobile parking app sent an in-app alert that Plaintiff's parking payment was about to expire. Dkt. #7 at 4; see also Pl.'s Compl. ¶ 27. But, again, notice that a car may soon be parked illegally is *not* equivalent to notice that the government has decided to *tow* that car. Mennonite, 462 U.S. at 800 ("[K]nowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending."). In Mullane, for example, even mailing interested parties a "copy of the statute" did not suffice to provide notice of an impending property deprivation. Mullane, 339 U.S. at 318.

Retriever Towing's should-have-known arguments misunderstand the nature of a *procedural* right to notice of the *tow* itself. Such arguments speciously conflate notice of the tow and knowledge of the law.[8]

---

[8] Retriever Towing's failure to distinguish between notice of the tow and knowledge of the underlying law explains why Retriever Towing emphasizes that Plaintiff is a lawyer. See Dkt. #7 at 6 ("and members of the Washington State Bar should certainly know"). Lawyers often do know more law. But, lawyers are entitled to the same procedural due process rights and, perhaps because of their knowledge of the law, are better situated to seek redress for violation of those rights.

PLAINTIFF'S OPPOSITION TO RETRIEVER TOWING'S RULE 12(b)(6) MOTION – 21

ii.  ***Clement* *Does Not Hold that Parking Citations Are Per Se Notice of a* *Tow.***

Retriever Towing's brief misrepresents what <u>Clement v. City of Glendale</u> held. Retriever Towing's brief argues that Plaintiff's claims are barred by "*Clements* [sic] which expressly held that a parking citation ***is*** constitutionally adequate notice." Dkt. #7 at 6 (emphasis in original), <u>see also</u> <u>id.</u> at 2-3.

<u>Clement</u> held no such thing. <u>Clement</u> was clear in what it held about notice: "we hold that the government must attempt to notify the owner of a vehicle parked in violation of a valid PNO certificate before the government may tow and impound it." <u>Clement</u>, 518 F.3d at 1095–96. In fact, <u>Clement</u> expressly stated that it did not sanction any particular method of attempting notice, let alone categorically pronounce that tickets provide sufficient notice of tows in all situations. <u>Id.</u> at 1095 n.9 ("We do not prescribe a particular procedure for giving notice; it is up to the government to develop a policy that will result in sufficient notice being given to car owners before impoundment.").

<u>Clement</u> did suggest that a police officer could have *attempted* notice with a ticket. <u>See</u> <u>id.</u> at 1094 ("a ticket *can* also serve as notice" (emphasis added)); <u>id.</u> at 1096 ("a due process requirement that notice be given—*usually* in the form of a ticket placed on the windshield" (emphasis added)). But, the Ninth Circuit's suggestions about tickets were made because, in <u>Clement</u>, the vehicle was towed "[w]ithout so much as a letter, a knock on the door, a note on her windshield or even a parking ticket." <u>Id.</u> at 1092. <u>Clement</u> is merely suggesting that a ticket might be a reasonable place to *start* attempting notice. But, <u>Clement</u> by no means says leaving a ticket is always constitutionally sufficient notice of a tow.

Furthermore, the Supreme Court has already addressed, and rejected, the idea that, simply because a method might work usually, that method is always constitutionally sufficient: "whatever the efficacy of posting in many cases, it is clear that, in the circumstances of this case, merely posting notice on [a car's windshield] does not satisfy minimum standards of due process." See Greene, 456 U.S. at 453.

Retriever Towing's claim that "a parking citation is constitutionally adequate notice" is absent from Clement, and such a per se rule is contrary to Supreme Court precedent.

### iii.    In This Case, the Parking Citations Were Not Notice of the Tow.

Retriever Towing also argues that Portland's parking citations were in fact proper notice. See Dkt. #7 at 4 ("*four* tickets") (emphasis in original).

This is plainly wrong. Under Mullane, the "sufficiency of notice must be tested with reference to its ability to inform." Greene, 456 U.S. at 451. The notice must explicitly "convey the required information." Mullane, 339 U.S. at 314. But, in this case, the tickets nowhere state that the government would tow Plaintiff's car. Pl.'s Compl. ¶¶ 34b, 35c, 36c, 37c. Portland admits as much. Portland's Answer (Dkt. #6) ¶¶ 34b, 35c, 36c, 37c. [9] Thus, the tickets could not provide notice of the tow.

Perhaps Retriever Towing thinks that explicit notice of a tow is not required due to the "common knowledge" that cars which have received parking citations may get towed. If so,

---

[9] Portland's Answer also alleges that Officer Earle left a "separate red warning slip," which explicitly warned of a tow, on the windshield of Plaintiff's car. Portland's Answer (Dkt. #6) ¶ 36c. This allegation is not before the Court on this Motion and, even if true, would not defeat Plaintiff's claims. See discussion supra at Parts III(E)(i)-(iii) (applying Mullane and Greene), III(G) (applying Jones).

Retriever Towing is merely rehashing an argument the Supreme Court has clearly rejected, as discussed above. Jones, 547 U.S. at 232 ("[C]ommon knowledge that property may become subject to government taking [...] does not excuse the government from complying with its constitutional obligation of notice."), see also discussion supra at Part IV(A)(i).

Even if the tickets had mentioned a tow, their ability to inform vanished when the car was towed away before Plaintiff saw them. Pl.'s Compl. ¶ 40. When the car was towed away with the posted materials still sitting atop Plaintiff's windshield, unseen and undisturbed, Defendants had good reason to know that Plaintiff "was no better off than if the notice had never been sent." Jones, 547 U.S. at 230 (internal quotation omitted). Regardless of what the posted materials said, they were not sufficient notice under Mullane.

Far from supporting Retriever Towing's Motion, the fact that Defendants tried posting notice "multiple times over multiple days," Dkt. #7 at 3, *without trying anything else* explains why Plaintiff has a claim. Such clearly ineffective attempts at notice fail the Mullane standard.

### iv.    Plaintiff Took Actions to Safeguard His Property Interests But Was Not Required to Under Mullane.

Elsewhere, Retriever Towing attempts to offload the constitutional obligation to provide notice onto Plaintiff by asserting what Plaintiff "could have [...] easily determined" or that Plaintiff "chose not to prudently conduct his personal affairs." Dkt. #7 at 5.

Again, the Supreme Court has already addressed, and rejected, this line of arguments: "a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation." Mennonite, 462 U.S. at 799. In fact, even a party's "failure to comply with a statutory obligation to keep his address updated" does not forfeit his right to constitutionally

sufficient notice. <u>Jones</u>, 547 U.S. at 232. Retriever Towing's "inquiry notice argument" has been addressed, and rejected, by the Supreme Court. <u>Id.</u>

Regardless, Plaintiff *did* take actions to safeguard his property interests in his car. First, he voluntarily registered with Portland own's mobile parking app, and provided his email address and cellphone number to Portland in the process. Pl.'s Compl. ¶¶ 14-16. Second, he voluntarily registered his car with a free tow-notification website that Portland knew of, KnowTow, to make it easier to contact him about the car. <u>Id.</u> ¶¶ 17-20. He attached conspicuous KnowTow decals to his car, identifying that his car was registered with KnowTow. <u>Id.</u> ¶¶ 21-22. These decals remain on his car to this day. In fact, Defendants McHenry and Earle took photographs of these very decals as they issued tickets. <u>Id.</u> ¶ 78a.

Retriever Towing's attempt to divest its constitutional obligations here is doubly wrong—wrong on the facts and wrong on the law.

**B. Instead of Applying <u>Mullane</u>, the Cases Cited by Retriever Towing Apply the Wrong Legal Standard.**

Retriever Towing does not cite a single case that applies the <u>Mullane</u> standard. In fact, Retriever Towing never states a legal standard for notice at all. <u>See generally</u> Dkt. #7.

The notice cases that Retriever Towing does cite all applied the <u>Mathews</u> balancing test, not the <u>Mullane</u> standard. <u>See</u> <u>Lone Star Sec. & Video, Inc. v. City of Los Angeles</u>, 584 F.3d 1232, 1238 (9th Cir. 2009) ("[W]e are guided by the context-specific balancing test set forth in <u>Mathews</u>."); <u>Clement</u>, 518 F.3d at 1093-95 (9th Cir. 2008) (citing <u>Mullane</u>, but then applying <u>Mathews</u> in weighing the "costs and burdens on the car owner" against the "burden for an

officer"); <u>Scofield v. City of Hillsborough</u>, 862 F.2d 759, 762 (9th Cir. 1988) (citing <u>Mathews</u> and "balanc[ing] the competing government and private interests").

In <u>Dusenbery v. United States</u>, however, the Supreme Court held that the appropriate test for questions of notice was the "more straightforward" <u>Mullane</u> test rather than the "<u>Mathews</u> balancing test." <u>Dusenbery</u>, 534 U.S. at 167. In <u>Dusenbery</u>, when a party sought to apply the <u>Mathews</u> balancing test to a question of notice under the Fourteenth Amendment, the Supreme Court saw "no reason to depart from [its] well-settled practice" of applying the <u>Mullane</u> standard in notice cases. <u>Id.</u> at 168.

The Supreme Court has "never viewed <u>Mathews</u> as announcing an all-embracing test for deciding due process claims." <u>Dusenbery.</u> 534 U.S. at 168. Rather, <u>Mathews</u> was conceived to address "the adequacy of administrative procedures" and hearings. <u>Id.</u> at 167. The adequacy of administrative procedures and hearings, however, is not at issue in the present case. The only question here is the adequacy of notice, a <u>Mullane</u> question. In sum, "[n]otice and the hearing are two distinct features of due process, and are thus governed by different standards." <u>Snider Int'l Corp. v. Town of Forest Heights</u>, 739 F.3d 140, 146 (4th Cir. 2014).

Importantly, the Supreme Court employs the <u>Mullane</u> standard to assess the "method used to give notice" regardless of the fact pattern or type of property in question. <u>See id.</u> at 168.[10] The Supreme Court's "leading cases on notice have evaluated the adequacy of notice given to

---

[10] <u>Dusenbery</u> makes clear that, when addressing the adequacy of notice, the Supreme Court has applied <u>Mullane</u> to widely varying fact patterns. <u>See</u> 534 U.S. at 168 (string-citing <u>New York City v. New York, N.H. & H.R. Co.</u>, 344 U.S. 293, 296 (1953); <u>Walker v. City of Hutchinson</u>, 352 U.S. 112, 115 (1956); <u>Schroeder v. City of New York</u>, 371 U.S. 208, 210 (1962); <u>Robinson v. Hanrahan</u>, 409 U.S. 38, 39 (1972) (per curiam); <u>Greene v. Lindsey</u>, 456 U.S. 444, 448 (1982); <u>Mennonite Bd. of Missions v. Adams</u>, 462 U.S. 791, 797 (1983); <u>Tulsa Professional Collection Services, Inc. v. Pope</u>, 485 U.S. 478, 484 (1988)).

beneficiaries of a common trust fund, a mortgagee, owners of seized cash and automobiles, creditors of an estate, and tenants." Jones, 547 U.S. at 229 (citations omitted).

The reasoning and analysis in Dusenbery requires that Mullane rather than Mathews be applied to questions of notice. Insofar as the cases cited by Retriever Towing—Lone Star, Clement, and Scofield—apply Mathews to questions on the adequacy of notice, they are no longer controlling Ninth Circuit authority. These Mathews cases are "clearly irreconcilable with the reasoning or theory of intervening higher authority." See Miller v. Gammie, 335 F.3d 889, 893 (9th Cir. 2003). Continuing to apply Mathews to questions of notice would further exacerbate "an inconsistency between [Ninth C]ircuit decisions and the reasoning of [the Supreme Court]." Id. at 900.

Thus, under the Ninth Circuit's own precedents, the Ninth Circuit would no longer apply the Mathews test to questions of notice, and would not view its prior decisions applying Mathews to questions of notice as binding. Neither should this Court. Lair v. Bullock, 697 F.3d 1200, 1206 (9th Cir. 2012) ("[T]his standard [of when to apply intervening higher authority instead of Ninth Circuit precedent] applies not only to three-judge panels but also to district courts within this circuit."). The Mathews "mode of analysis" has been undercut by the Supreme Court's insistence on the application of Mullane to questions of notice. See Miller, 335 F.3d at 900.

Respectfully, this Court should apply Mullane here. Retriever Towing is wrong to rely upon Clement, Scofield, and Lone Star insofar as they apply Mathews to questions of notice.

**C. The Motion Should Still Be Denied Even If the <u>Mathews</u> Balancing Test Applied.**

Even if the <u>Mathews</u> balancing test were the correct legal test, this case would still come out in Plaintiff's favor.

<u>Mathews</u> is a three-factor, "context-specific balancing test" that is applied to the particular circumstances of the case at hand. <u>Lone Star</u>, 584 F.3d at 1238. The <u>Mathews</u> balancing test weighs three factors: (1) "the private interest," (2) "the risk of erroneous deprivation" and "value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest." <u>Id.</u> (quoting <u>Mathews</u>).

Under <u>Mathews,</u> the "constitutional contours of due process turn on the specific circumstances of the case." <u>Strong v. Bd. of Educ.</u>, 902 F.2d 208, 211 (2d Cir. 1990). Retriever Towing's Motion, however, does not apply *any* of the three factors of the <u>Mathews</u> test to the specific circumstances of the present case. <u>See generally</u> Dkt. #7. A context-specific analysis in the present case is especially important because the facts here are markedly distinct from the facts of <u>Lone Star</u>, <u>Clement</u>, and <u>Scofield</u>.

Though it is the wrong legal standard to determine the adequacy of notice, applying the <u>Mathews</u> test here, *arguendo*, would still require Defendants to provide Plaintiff with immediate, actual notice of the tow, through effective communication methods.

> ***i.   Here, on the first <u>Mathews</u> factor, the private interest is stronger than in the cases cited by Retriever Towing.***

Applying the first <u>Mathews</u> factor here, the "uninterrupted use of one's vehicle is a significant and substantial private interest." <u>Scofield</u>, 862 F.2d at 762.

---

Moreover, Plaintiff has a stronger interest in the uninterrupted use of his vehicle than did the plaintiffs in Lone Star, Clement, or Scofield. Unlike the plaintiff in Lone Star, Plaintiff uses his car for transportation. See Lone Star, 584 F.3d at 1238 ("Lone Star was not using its trailers for transportation, but as an advertising medium in residential neighborhoods."). Unlike the plaintiff in Clement, Plaintiff can legally drive his car on public roads. See Clement, 518 F.3d at 1094 ("Clement couldn't legally drive her car on public roads."). And, unlike the plaintiff in Scofield, the vehicle registration of Plaintiff's car was not expired. Scofield, 862 F.2d at 761 ("[R]egistration had been expired for over a year.").[11]

Thus, the first Mathews factor tips more in Plaintiff's favor than in any of cases that Retriever Towing cites.

> ***ii.    Here, on the second Mathews factor, the right of notice is of paramount value and notice is readily achievable using commonplace technology.***

The second Mathews factor weighs in Plaintiff's favor as well. Unlike the situation in Lone Star or Scofield, Defendants could have easily provided pre-towing notice here, and the risk of erroneous deprivation is higher in the present case than in Lone Star, Clement, or Scofield.

Scofield acknowledged that, when towing a car "without prior notice, there is always a risk that information relied upon for the tow may prove to be erroneous." Scofield, 862 F.2d at 764. Scofield, however, reasoned that, in that case, the risk was small because the car had not

---

[11] Although the registration stickers on Plaintiff's car had not yet been updated, Plaintiff's vehicle registration was up-to-date at the time of the tow.

been registered for over a year. Id. By contrast, Plaintiff's vehicle was properly registered at the time of the tow.

Likewise, in Lone Star, the risk of erroneous deprivation was uniquely low because that case involved a "chronic offender" who had been towed 77 (seventy-seven) times. Lone Star, 584 F.3d at 1234, 1238. By contrast, this was the first time that Plaintiff's car had been towed in Portland. Thus, the risk of erroneous deprivation is far greater in the present circumstances than in Lone Star.

Regarding the value of the procedural right, notice is of paramount value. Prior notice "is central to the Constitution's command of due process." James Daniel Good Real Prop., 510 U.S. at 53. That is why notice is required "before property interests are disturbed, before assessments are made, before penalties are assessed." Lambert v. California, 355 U.S. 225, 228 (1957). The "default rule is advance notice and the state must present a strong justification for departing from the norm." Clement, 518 F.3d at 1094.

Until the advent of modern communication technologies, providing pre-towing notice may have been impracticable or at least very burdensome. When Scofield was decided in 1988, pre-towing notice would not have been easy. At that time, there was no internet, no smartphones, no mobile apps, and email was in its nascency.

Scofield itself emphasized the reasoning of Sutton v. City of Milwaukee, 672 F.2d 644 (7th Cir. 1982), a case where the Seventh Circuit had based its denial of pre-towing notice for illegally parked cars on the theory that "[t]here is *no way* that the city or state can notify the owners of illegally parked cars that their cars will be towed." Scofield, 862 F.2d at 763 (quoting Sutton, 672 F.2d at 646) (emphasis added). In this sense, Scofield's refusal to embrace pre-towing notice is best viewed as a concession to necessity.

Indeed, <u>Scofield</u> noted that, given the then-existing technology in 1988, requiring the *procedure* of pre-towing notice would, necessarily, affect the *substance* of the government's authority to tow. Requiring pre-towing notice in 1988 would have, in effect, entirely eliminated the government's ability to tow a vehicle: "if a notice had to be given before towing an illegally parked car, this would, in effect, preclude towing of all illegally parked vehicles." <u>Scofield</u>, 862 F.2d at 763 (1988).

Fast forward thirty years and the state of communication technologies is entirely different. Email, text messages, mobile phones, app notifications, and websites have been widely adopted in society. Unlike in 1988—<u>Scofield</u>'s time—providing pre-towing notice would not be burdensome and would not be impracticable today. Rather, in 2018, pre-towing notice can be accomplished with little more than the push of a few buttons.

Thus, the second <u>Mathews</u> factor weighs dramatically more in Plaintiff's favor than it did for the plaintiff in <u>Scofield</u>.

### iii.    Here, on the third <u>Mathews</u> factor, the government's interest is advanced, not hindered, by pre-towing notice.

Retriever Towing alleges three government interests in towing vehicles: (1) "[i]mplementing parking regulations," (2) deterring "future violators," and (3) "preventing vandalism and abating nuisance." Dkt. #7 at 3 (citing <u>Lone Star</u> and <u>Scofield</u>).

The first interest is, in fact, advanced by pre-towing notice. The second interest is *not* a valid interest in the Ninth Circuit. And, the third interest does not apply here, but instead only applied to the idiosyncratic facts of <u>Lone Star</u>. In sum, pre-towing notice *furthers* the government interest under the <u>Mathews</u> test.

First, the government interest in implementing its parking regulations was to move Plaintiff's illegally parked car. See Scofield, 862 F.2d at 763–64. Providing pre-towing notice is certainly not antithetical to that government interest. In fact, pre-towing notice may very well advance that government interest. Cf. Jones, 547 U.S. at 236 (When a property owner has lapsed on property-tax payments, "[s]uccessfully providing notice is often the most efficient way to collect unpaid taxes."). Indeed, Scofield itself recognized that pre-towing notice "encourages removal of the car from its place of repose, which is the governmental interest such a notice seeks to advance." Scofield, 862 F.2d at 764.

Second, under Ninth Circuit precedent, deterrence is not an acceptable reason to tow a vehicle: "The need to deter a driver's unlawful conduct is by itself insufficient to justify a tow [...]." Miranda v. City of Cornelius, 429 F.3d 858, 866 (9th Cir. 2005). Deterrence may be appropriate for criminal violations, but not for illegally parked cars. Id. Thus, the government interest in deterrence asserted by Retriever Towing has been rejected by the Ninth Circuit.

Third, vandalism and nuisance abatement are not genuine concerns in this case. Lone Star involved the towing and impoundment of a "chronic offender" who was trying to "game the system" by using "cost-free, long-term parking in public spaces" for a for-profit, guerrilla-marketing campaign over the course of years. 584 F.3d at 1238-39. Los Angeles had "towed and impounded 77 of Lone Star's trailers." Id. at 1234.

Billboard-bearing trailers that wantonly violate parking laws to consummate a guerrilla-marketing campaign in residential neighborhoods raise idiosyncratic concerns about nuisance and vandalism limited to the peculiar facts of Lone Star. Those concerns are simply not applicable to the present case.

In sum, the only applicable interest that Retriever Towing cites—getting Plaintiff's car moved—would be *advanced*, not hindered, by pre-towing notice. In other words, the government's interest dovetails with Plaintiff's private interest: both support pre-towing notification in cases like this one.

Indeed, there is "very little by way of a legitimate government interest in ordering a tow of the vehicle in the first instance, rather than giving the owner notice and an opportunity to avoid the cost and hassle of having to deal with a towed vehicle." Clement, 518 F.3d at 1095.

**D. Plaintiff Does Not Assert That Any Particular Form of Notice Was Required.**

Finally, Retriever Towing's brief mistakenly states that Plaintiff "believed the City was required to utilize" KnowTow to provide notice. Dkt. #7 at 6.

Plaintiff has no such belief. Nor was any such belief expressed in the Complaint. Rather, KnowTow is just one of the many "alternatives and supplements" that could have been used to provide immediate, actual notice of the tow. See Greene, 456 U.S. at 454.

To decide this Motion, or this case, in Plaintiff's favor, the Court does not need to sanction any particular form of notice, but merely to decide if Defendants' attempts at notice met the Mullane standard. See discussion supra at Part III(I).

In fact, Retriever Towing's quote from Garland v. Washington actually supports Plaintiff's claim. See Dkt. #7 at 6. Retriever Towing points out that due process does not require "any particular form of procedure" so long as there was "sufficient notice." Id. (quoting Garland v. Washington, 232 U.S. 642, 645 (1914)). Exactly.

Defendants did not need to adopt any particular method of notice; they simply had to provide constitutionally sufficient notice. However, there was not sufficient notice here. Again,

to be constitutionally sufficient, whatever form of notice the government chooses must be what

someone "desirous of actually informing" would choose. <u>Mullane</u>, 339 U.S. at 315.

Despite multiple options to easily provide immediate, actual notice of the tow,

Defendants chose not to use any of them. Giving up after simply posting materials on Plaintiff's

windshield, therefore, was *not* sufficient notice.


## V. CONCLUSION

Retriever Towing's Motion does not cite a legal standard for questions of notice. To the

degree Retriever Towing's Motion implies a legal standard, it implies the wrong legal standard.

And, to the degree that Retriever Towing's Motion employs the wrong legal standard, it fails to

apply that legal standard to the facts of this case. Regardless, the arguments raised by Retriever

Towing's Motion have been addressed, and rejected, by the Supreme Court.

The appropriate legal standard for questions of notice is the Supreme Court's well-settled

<u>Mullane</u> standard. Applying <u>Mullane</u> here demonstrates that Defendants' conduct fell far short of

what was constitutionally required. Defendants chose not to provide immediate, actual notice

when they easily could have. Simply put, Defendants did not act like they were "desirous of

actually informing" Plaintiff of the tow.

Thus, Defendants violated Plaintiff's Fourteenth Amendment right to notice. Plaintiff,

therefore, has valid § 1983 claims against all Defendants. For the foregoing reasons, Plaintiff

respectfully requests that this Court deny Retriever Towing's Motion to Dismiss (Dkt. # 7).


                                         Respectfully submitted,

Dated: March 7, 2018                     s/Andrew Grimm_____
                                         Andrew Grimm
                                         Pro Se Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing Plaintiff Andrew Grimm's OPPOSITION TO

THE RULE 12(b)(6) MOTION TO DISMISS filed by Defendant Retriever Towing on:

> Mr. Robert Yamachika
> Deputy City Attorney
> Office of City Attorney
> 1221 SW 4th Ave, Suite 430
> Portland, OR 97204
> Email: Rob.Yamachika@portlandoregon.gov
> Telephone: (503) 823-4047
> Facsimile: (503) 823-3089
> > *Of Attorney for Defendants City of Portland,*
> > *L. McHenry, and F. Earle*

> Mr. Matthew Lowe
> Jordan Ramis PC
> Two Centerpointe Drive, 6th Floor
> Lake Oswego, OR 97035
> Email: matthew.lowe@jordanramis.com
> Telephone: (503) 598-7070
> Facsimile: (503) 598-7373
> > *Of Attorney for Retriever Towing*

by **electronic filing** in CM/ECF.

Dated: March 7, 2018                         s/Andrew Grimm_____
                                             Andrew Grimm
                                             Pro Se Plaintiff

---