**Matthew D. Lowe,** OSB# 003093
E-mail:  matthew.lowe@jordanramis.com
JORDAN RAMIS PC
Attorneys at Law
Two Centerpointe Dr 6th Flr
Lake Oswego OR 97035
Telephone:  (503) 598-7070
Facsimile:  (503) 598-7373
    Attorneys for Defendant Retriever Towing

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ANDREW GRIMM**, <br><br> Plaintiff, <br><br> v. <br><br> **CITY OF PORTLAND, L. MCHENRY, F. EARLE, AND RETRIEVER TOWING**, <br><br> Defendants. | Case No. 3:18-CV-183-MO <br><br> DEFENDANT RETRIEVER TOWING'S REPLY IN SUPPORT OF MOTION TO DISMISS |

Plaintiff has failed to state a claim for relief because (a) his vehicle did not display current registration tags, and, separate from that, (b) the vehicle was otherwise parked unlawfully.  Both of these facts independently establish as a matter of law that plaintiff received all the process that was due him.

/////

/////

/////

Page 1 –DEFENDANT RETRIEVER TOWING'S REPLY IN SUPPORT OF MOTION TO DISMISS

**1.** ***Mathews,*** **not** ***Mullane*****, established the recognized standard in determining whether due process has been satisfied in towing cases. Ninth Circuit case law is still controlling.**

In support of the underlying motion, defendant Retriever Towing ("Retriever Towing") referred this Court to *Scofield v. City of Hillsborough*, 862 F.2d 759 (9th Cir. 1988), *Lone Star Security & Video, Inc. v. City of Los Angeles*, 584 F.3d 1232 (9th Cir. 2009), and *Clement v. City of Glendale*, 518 F.3d 1090 (9th Cir. 2008). All of these cases will be addressed more fully below, but in essence they all stand for the proposition that one who parks his or her vehicle illegally or fails to display current registration tags on the license plate is not entitled to any more pre-tow notice under the 14th Amendment than was received by plaintiff here. Each of these cases relied upon the three-part due process balancing test (addressed below) established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Plaintiff argues that this reliance was misplaced, that the applicable standard which should have been applied is the "reasonableness under the circumstances" standard set forth in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), and therefore this Court should not rely on *Scofield, Lone Star,* or *Clement*. For the reasons set forth below, plaintiff is wrong. In 1950, the U.S. Supreme Court held:

> But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.

*Mullane* at 315. Then in 1976, the U.S. Supreme Court then held:

> (D)ue process generally requires consideration of three distinct factors: First the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Page 2 –DEFENDANT RETRIEVER TOWING'S REPLY IN SUPPORT OF MOTION TO DISMISS

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). In 2002, the Supreme Court revisited both *Mullane* and *Mathews* in a case addressing what process was due in a civil forfeiture proceeding. *Dusenberry v. U.S.*, 534 U.S. 161 (2002). In *Dusenberry*, the Supreme Court indicated that it would apply the "reasonableness under the circumstances" standard found in *Mullane*, *id.* at 161, further holding:

> We think *Mullane* supplies the appropriate analytical framework. The *Mathews* balancing test was first conceived in the context of a due process challenge to the adequacy of administrative procedures used to terminate Social Security disability benefits. Although we have since invoked *Mathews* to evaluate due process claims in other contexts, * * * we have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims. Since *Mullane* was decided, we have regularly turned to it when confronted with questions regarding the adequacy of the method used to give notice. * * * We see no reason to depart from this well-settled practice.

*Id.* at 167-68. (Citations omitted.)

Relying on *Dusenberry*, plaintiff argues that the Ninth Circuit cases relied upon by Retriever Towing (*Scofield, Lone Star,* and *Clement*, cited above) are inapplicable because they wrongly apply "the Mathews balancing test, not the Mullane standard." *Plaintiff's Opposition to Retriever Towing's Rule 12(b)(6) Motion* ("*Plaintiff's Opposition*"), P. 25.

*Dusenberry*, however, does not require this Court to apply *Mullane* as plaintiff contends. First, it bears noting that *Dusenberry* did not overturn *Mathews*. The Supreme Court has continued to apply *Mathews* in other contexts—including, notably, at least one towing case (addressed below). Additionally, *Dusenberry* did not hold that the sufficiency of notice under the 14th Amendment must be evaluated under *Mullane* in all circumstances, and on this point, there is a substantial (and controlling) distinction here.

/////

Page 3 –DEFENDANT RETRIEVER TOWING'S REPLY IN SUPPORT OF MOTION TO DISMISS

In *Dusenberry,* the Supreme Court was asked to consider what notice was due related to the forfeiture of property seized upon the execution of a search warrant while *Dusenberry* was in prison. *Dusenberry* at 161. There was *no* risk that Mr. Dusenberry could hide the property. Likewise, the Supreme Court in *Dusenberry* noted that "it regularly turned to [*Mullane*] when confronted with questions regarding the adequacy of the method used to give notice." *Dusenberry* at 168. All of the cases cited by the Supreme Court as examples of this practice, however, all had one-thing in common with *Dusenberry*—there was absolutely *no* risk of the property owner hiding the property (or property interest) and no risk of avoiding the consequences of unlawful activity.[1]

The analysis here, however, is quite different. The Ninth Circuit has repeatedly noted that, unlike real property or intangible property rights, an unlawfully parked vehicle can be moved, and by doing so avoid the consequence of the owner's ongoing unlawful activity. *See Scofield*, *supra* at 764 ("If notice had to be given before a car with a year-old registration could be towed, it is likely that the car would simply be driven away. This would not advance the governmental interest of getting the car registered"). *See also Soffer v. City of Costa Mesa*, 607 F.Supp. 975, 982 (1985), *aff'd* 782 F.2d 361 (9th Cir. 1986) ("Given the ease with which they could move their vehicles and thereby comply with the ordinance, it would be unduly

---

[1] *Dusenberry* cited: *New York City v. New York, N.H. & H.R. Co.,* 344 U.S. 293, 296, 73 S.Ct. 299, 97 L.Ed. 333 (1953) (publication of notice of right to file claims analyzed under *Mullane*); *Walker v. City of Hutchinson,* 352 U.S. 112, 115, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956) (publication of notice of condemnation proceedings for real property analyzed under *Mullane*); *Schroeder v. City of New York,* 371 U.S. 208, 210, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962) (publication of notice of intent to divert water analyzed under *Mullane*); *Robinson v. Hanrahan,* 409 U.S. 38, 39, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972) *(per curiam)* (forfeiture proceeding analyzed under *Mullane*)*; Greene v. Lindsey,* 456 U.S. 444, 448, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982) (posted summons in an FED proceeding analyzed under *Mullane*); *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 797, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) (publication of sale of real property analyzed under *Mullane*); and *Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 484, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988) (publication of right to contest estate plan analyzed under *Mullane*)*.*

burdensome to read into the constitution a requirement that a hearing must be provided for those litigious citizens who would rather argue about than comply with a municipal ordinance.")

In 2003, *after Dusenberry*, the U.S. Supreme Court, reversing the Ninth Circuit, expressly applied *Mathews* in a §1983 proceeding, holding that the City of Los Angeles's towing procedures were constitutional. *City of Los Angeles v. David*, 538 U.S. 715, 716-17 (2003).[2]

Although *Scofield* was issued prior to *Dusenberry*, both *Lone Star* and *Clement* were issued afterwards. More recently, in 2017, the Ninth Circuit, again applying *Mathews* (and meticulously so) to a towing case in a §1983 proceeding, held that "once this court has concluded a protected interest is at stake, ***it must apply*** the three-part balancing test established in *Mathews v. Elridge*(.)" *Yagman v. Garcetti*, 852 F.3d 859, 864 (2017) (rejecting Yagman's argument that *Mathews* "is inapplicable because it 'tolerates some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the

---

[2] *David* addressed the constitutionality of post-tow procedures (specifically the timing of a post-tow hearing) and therefore is not necessarily inconsistent with *Dusenberry*. However, at least one Circuit Court has applied *David* (which, in turn, applied *Mathews)* in analyzing the right to pre-tow notice. *French v. Koch's Body Shop*, 170 Fed.Appx. 977, 978 (8th Cir. 2006) (unpublished) [citing *City of Los Angeles v. David*, *supra*, held "failure to provide French with pre-seizure notice or hearing (of the towing of his vehicle) did not violate his procedural rights." Other courts have applied *David* (thus *Mathews*) in this pre-tow context. *See e.g. Barcena v. Department of Off-Street Parking City of Miami*, 492 F.Supp. 1343, 1353 (S.D. Florida 2007) (citing *City of Los Angeles v. David*, *supra*, held "the interest of DOSP in enforcing parking regulations without being required to provide pre-tow notice and a hearing, outweighs the interest of Plaintiff in the temporary deprivation of the use of the vehicle until the post-tow process can be utilized"); *Shipley v. Ordnoff*, 491 F.Supp.2d 498, 507-08 (D. Delaware 2007) (citing *City of Los Angeles v. David*, *supra*, found that plaintiff's allegation that he was denied due process because he was "not give notice or allowed to present a defense when his vehicle was towed" insufficient to state a claim.); and *Oberhausen v. Louisville-Jefferson County Metro Government*, 527 F.Supp.2d 713, 723 (W.D. Kentucky 2007) (citing *City of Los Angeles v. David*, *supra*, as well as *Mathews*, *surpa*, held that "due process does not require separate notice and opportunity for hearing, in addition to that provided by each parking ticket, prior to Metro Government booting and impounding vehicles(.)")

Page 5 –DEFENDANT RETRIEVER TOWING'S REPLY IN SUPPORT OF MOTION TO DISMISS

event.'"). (Citations omitted; emphasis added.) The court added: "(p)roperly framed, the issue is not whether predeprivation notice and a full, formal hearing are required; it is whether the City's procedures as a whole are constitutionally adequate under the circumstances—a determination that requires application of the *Mathews* test." *Id.*

Ninth Circuit case law, even after *Dusenberry*, overwhelmingly affirms that *Mathews*, which is still the law of the land, is the appropriate standard in towing cases. "District courts are bound by the law of their own circuit." *Hasbrouck v. Texaco, Inc.*, 663 F.2d 930, 933 (1981). Indeed, the Ninth Circuit has held that its decisions must be followed by their district courts "unless there is some *controlling* distinction or some *subsequent* decision by the Supreme Court requiring us to depart therefrom." *Jorgensen v. Swope*, 114 F.2d 988, 989 (9th Cir. 1940). (Emphasis added.) There is no "controlling distinction" and no "subsequent decision" by the Supreme Court which provides that, at the very least, *Lone Star* and *Clement* or invalid. Respectfully, it is not for this Court to overturn Ninth Circuit precedent, particularly where it applied a standard that is still used by the Supreme Court under similar circumstances.

Even if this Court, however, were to find that current Ninth Circuit case law did not apply, and that *Mullane* is the appropriate standard, plaintiff still fails to state a claim for relief because, even under *Mullane*, plaintiff has received all of the notice he is due. *Mullane* differentiated the property interest at stake (notice to beneficiaries on a judicial settlement of accounts by the trustee of a common law trust fund) to the interest one may have in tangible property. *Mullane* at 308 and 316. Addressing the later, the Court noted:

> The ways or an owner [*sic*.] with tangible property are such that he usually arranges means to learn of any direct attack upon his possessory or proprietary rights. Hence, libel of a ship, attachment of a chattel or entry upon real estate in the name of law ***may reasonably be expected to come promptly to the owner's attention***. When the state within which the owner has located such property seizes it for some reason, publication or posting affords an additional measure of notification. A state may indulge the

Page 6 –DEFENDANT RETRIEVER TOWING'S REPLY IN SUPPORT OF MOTION TO DISMISS

> assumption that one who has left tangible property in the state either has abandoned it, in which case proceedings against it deprive him of nothing, cf. Anderson National Bank v. Luckett, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692, 151 A.L.R. 824; Security Savings Bank v. California, 263 U.S. 282, 44 S.Ct. 108, 68 L.Ed. 301, 31 A.L.R. 391, or that he has left some caretaker under a duty to let him know that it is being jeopardized. Ballard v. Hunter, 204 U.S. 241, 27 S.Ct. 261, 51 L.Ed. 461; Huling v. Kaw Valley Ry. & Imp. Co., 130 U.S. 559, 9 S.Ct. 603, 32 L.Ed. 1045. As phrased long ago by Chief Justice Marshall in The Mary, 9 Cranch 126, 144, 3 L.Ed. 678, '***It is the part of common prudence for all those who have any interest in (a thing), to guard that interest by persons who are in a situation to protect it.***'

*Mullane* at 316. (Emphasis added.) This case presents an issue that is quite distinct from the intangible interest at issue in *Mullane* where a heightened duty to use the mail was needed to at least notify most beneficiaries so they can protect the rights of all. Posting notice on a vehicle is akin to an *in rem* proceeding and the notice "may reasonably be expected to come promptly to the owner's attention(.)" After all one would assume that plaintiff would check on his vehicle at least once over the course of a week after parking his vehicle in a metered space where he admittedly paid for parking in the first instance.

Moreover, *Dusenberry* refutes plaintiff's argument that advances in technology demand that the Court reject less tech-savvy notice noting that the Supreme Court "has never held that improvements in the reliability of new procedures necessarily demonstrate the infirmity of those that were replaced." *Dusenberry* at 162. This is true even if new notice procedures were to "improve delivery to some degree(.)" *Id.* New technology and alleged availability of contact information does not demonstrate that actual notice placed on plaintiff's vehicle was insufficient to notify plaintiff, particularly where the government could reasonably expect the vehicle's operator to be checking on the car.

/////

/////

> **2. Plaintiff was not entitled to pre-tow notice because (a) his vehicle did not display current registration, and (b) he parked his vehicle illegally. Notice of the consequences is irrelevant.**
>
> **a. Vehicle Registration.**

In his complaint, plaintiff expressly refers this Court to the four citations he received: Citation No. HA30383285 (issued December 15, 2017), Citation No. HA30925527 (issued December 18, 2017), Citation HA30925545 (issued December 19, 2017), and Citation HA30925607 (issued December 21, 2017). *Complaint*, ¶¶34-37. All four citations are attached hereto as Exhibit 1, and by this reference incorporated herein.[3] All four citations, issued in *December* of 2017, displayed tags that expired in *June* of 2017—six months prior to the citations. In *Scofield*, *supra*, the Court held:

> We think that the governmental interest in towing unregistered vehicles is analogous to the governmental interest in towing illegally parked vehicles. By towing unregistered vehicles, the government removes these automobiles from the public streets, encourages owners to maintain automobile registration, and deters owners from violating state registration laws. If notice had to be given before a car with a year-old registration could be towed, it is likely the car would simply be driven away. This would not advance the governmental interest of getting the car registered. On the other hand, giving a pre-towing notice to the owner of an apparently abandoned vehicle encourages removal of the car from its place of repose, which is the governmental interest such a notice seeks to advance.

*Scofield* at 763-64. Under these circumstances, the Court held that "due process does not require that a pre-towing notice be given." *Id.* at 764. The Ninth Circuit confirmed this rule, post *Dusenberry*, in *Clement*, *supra*: "A tow may also be appropriate where there are ***no current registration stickers*** and police can't be sure that the owner won't move or hide the vehicle,

---

[3] Retriever Towing requests that the Court take judicial notice of all four citations. Judicial notice is appropriate because, at the very least, plaintiff expressly refers to them in his pleading. *Elizabeth Retail Properties LLC v. KeyBank National Association*, 83 F.Supp.3d 972, 984 (2015).

Page 8 –DEFENDANT RETRIEVER TOWING'S REPLY IN SUPPORT OF MOTION TO DISMISS

rather than pay the fine for illegally parking." *Clement* at 1094-95. (Emphasis added.)

Plaintiff argues that *Scofield* would not apply to this case because "the vehicle registration of [his] car was not expired(,)" *Plaintiff's Opposition*, P. 29, adding that "[a]lthough ***the registration stickers on Plaintiff's car had not yet been updated,*** Plaintiff's vehicle registration was up-to-date at the time of the tow." *Plaintiff's Opposition,* P. 29 n. 11. (Emphasis added.) This is a distinction without meaning.

Assuming for the sake of argument that the vehicle's registration was current with the (presumably California) Department of Motor Vehicles, there is no dispute that the tags on plaintiff's vehicle were not up-to-date at the time of the tow. ORS 803.560 provides in pertinent part:

> (1) A person commits the offense of improper display of validating stickers if the person owns or drives a vehicle on which the display of registration stickers provides proof of valid registration and:
>
>   (a) The stickers are not displayed in a manner required by the Department of Transportation; or
>
>   ***(b) The stickers are displayed on the vehicle after the registration period shown on the stickers.***

(Emphasis added.)

Portland City Code §16.90.005 defines an abandoned vehicle as: "A vehicle that remains in violation for more than 24 hours and one or more of the following conditions exist: A. The vehicle does not have a lawfully affixed, ***unexpired registration plate***, ***or fails to display current registration***." (Emphasis added.) Plaintiff expressly pled that he left his vehicle illegally parked for a period of more than 24 hours. Plaintiff concedes, without expressly saying as much, that he was in violation of ORS 803.560 and PCC §16.90.005 the entire time. Under *Scofield*, the vehicle was properly towed and plaintiff was simply not entitled to further notice under the 14th Amendment.

Page 9 –DEFENDANT RETRIEVER TOWING'S REPLY IN SUPPORT OF MOTION TO DISMISS

### b.     Plaintiff's vehicle *was* illegally parked.

There is *no* dispute that plaintiff had illegally parked his vehicle for a continuous one-week period.  Plaintiff knowingly parked in a time-limited space, *Complaint*, ¶25.  Plaintiff was made aware of the fact that his parking time had expired through Portland's mobile parking app.  *Complaint*, ¶¶27-28.  (Of course, this too served as additional, contemporaneous notice that this Court should consider in determining whether plaintiff's due process rights were violated.)  Plaintiff *chose* not to refill the parking meter.  *Complaint*, ¶30.  Plaintiff was fully aware that, for a continuous week long period, that his vehicle was illegally parked.  *Complaint*, ¶31.  Portland City Code §16.30.220 allows an authorized officer, "without prior notice" to order a vehicle towed when:

> B. The vehicle is parked in a conspicuously posted restricted space, zone, or traffic lane where parking is limited to designated classes of vehicles or is prohibited in excess of a designated time period, or during certain hours, or on designated days, or at any time and place the vehicle is interfering or reasonably likely to interfere with the intended use of such a space, zone, or traffic lane(.)

Under controlling Ninth Circuit law, due process under the 14th Amendment is met when a ticket is placed on the offending vehicle's windshield.  *Scofield* at 1096.  Here, plaintiff received *four* tickets—all of which were placed on the vehicle's windshield.  *Complaint*, ¶¶34-37.  Plaintiff received all the process he was due.

### c.     No "notice of tow" is required and Plaintiff's knowledge is pertinent.

Plaintiff argues that none of the citations contained a "notice of tow."  ¶¶38-39. *Opposition*, Pp. 23-24.  That specificity of notice is not required here because, as indicated above, plaintiff waived *any* pre-tow notice by failing to display current registration tags on the vehicle.

/////

Plaintiff argues that this Court may not impute knowledge of the fact that illegally parked cars will be towed as a response to what he perceives as his unfettered right to notice of the tow, regardless of whether he understood the consequences of his actions. *Opposition*, Pp. 20-21. That plaintiff is entitled to "due process," regardless of his knowledge, is not disputed. What is disputed is what process is *therefore* due. In *Lone Star*, the Ninth Circuit indicated that a due process analysis may take into consideration the offender's knowledge, finding:

> Whatever the risk may be of erroneously towing a first-time offender's vehicle for violating the 72-hour rule, this risk ***is considerably reduced for a chronic offender such as Lone Star who demonstrates a pattern of violating the rule***.

*Lone Star* at 1239. (Emphasis added.) There is, of course, nothing in the pleadings suggesting that plaintiff is a serial parking offender. What *is* in the pleadings, however, is that plaintiff was fully aware that he was in violation for nearly a week-long period on a downtown street, *Complaint*, ¶¶27-28, 31. What is also in the pleadings is that plaintiff recognized the possibility that his vehicle would be towed because he subscribed to a service (Know Tow) he erroneously believed would shield him from suffering the consequences of his ongoing willful action— knowingly and unlawfully parking is vehicle over the course of entire week in downtown Portland. *Complaint*, ¶¶17-23. Under these circumstances, additional notice of the consequences of his knowingly illegal activity would not have served any purpose.

/////
/////
/////
/////
/////
/////

Page 11 –DEFENDANT RETRIEVER TOWING'S REPLY IN SUPPORT OF MOTION TO DISMISS

52809-76491 *2943344_4\RH/3/21/2018*

...

Case 3:18-cv-00183-MO    Document 16    Filed 03/21/18    Page 12 of 13


### 3. Conclusion

As pled, plaintiff fails to state a claim for relief.  Even though plaintiff was entitled to *no* notice, he did receive notice—four times!  There are *no* facts which will change this conclusion, and therefore dismissal with prejudice is warranted.

Dated this 21st day of March, 2018.

JORDAN RAMIS PC

By: *s/ Matthew D. Lowe*
**MATTHEW D. LOWE,
OSB # 003093**
Two Centerpointe Dr 6th Flr
Lake Oswego OR 97035
Telephone:  (503) 598-7070
matt.lowe@jordanramis.com
**Attorneys for Defendant Retriever Towing**

## CERTIFICATE OF SERVICE

I hereby certify that on the date shown below, I served a true and correct copy of the foregoing DEFENDANT RETRIEVER TOWING'S REPLY IN SUPPORT OF MOTION TO DISMISS on:

> Andrew Grimm
> 15287 Pepperwood Drive
> Omaha, NE 68154
> Agrimm3@gmail.com
>     Plaintiff Pro se

> Mr. Robert Yamachika
> Portland Office of City Attorney
> 1221 SW 4th Ave Ste 430
> Portland OR  97204
> Fax:  503 823-3089
> Email: rob.yamachika@portlandoregon.gov
>     Attorneys for the City of Portland

☐     by first class mail, postage prepaid.

☐     by hand delivery.

☐     by facsimile transmission.

☐     by facsimile transmission and first class mail, postage prepaid.

☒     by electronic transmission via ECF.

☐     by electronic transmission and first class mail, postage prepaid.

DATED:  March 21, 2018.

*s/ Matthew D. Lowe*
Matthew D. Lowe, OSB # 003093
Of Attorneys for Retriever Towing